**PAEY ASSOCIATES, INC. t/a 40 Below, Appellant**

v.

**PENNSYLVANIA LIQUOR CONTROL BOARD.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 2013.

Decided Oct. 4, 2013.

1188

L. Paul Johnston, Jr., Macungie, for appellant.

Robert W. McAteer, Deputy Chief Counsel, Harrisburg, for appellee.

BEFORE: PELLEGRINI, President Judge, COVEY, Judge and FRIEDMAN, Senior Judge.

OPINION BY Judge COVEY.

Paey Associates, Inc. t/a 40 Below (Licensee) appeals from the Northampton County Common Pleas Court's (trial court) January 3, 2013 order denying Licensee's appeal from the Pennsylvania Liquor Control Board's (PLCB) refusal to renew Licensee's Restaurant Liquor License No. R–15950 (License). The issues for this Court's review are: (1) whether Licensee was prejudiced because it did not receive the PLCB's April 2010 warning letter; (2) whether inadmissible hearsay was admitted at the trial court hearing; (3) whether police incidents established a pattern of illegal activity at Licensee's premises sufficient for the PLCB to refuse to renew the License; (4) whether the evidence supporting a connection between illegal activi-

ty and the licensed premises was sufficient for the PLCB to refuse to renew the License; and, (5) whether a single 2008 citation for a "Ladies Night" was sufficient evidence for the PLCB to refuse to renew the License.

Licensee has held its License since October 2006. In accordance with Section 470 of the Liquor Code,[1] 47 P.S. § 4–470, Licensee applied to renew its License for the premises located at 40 West Broad Street, Bethlehem, Pennsylvania for the period beginning May 1, 2012 and ending April 30, 2014.[2] By April 18, 2012 letter (Objection Letter), the PLCB's Bureau of Licensing (Licensing) objected to the License renewal based upon Citation No. 08–1427, and 19 police incidents at or immediately adjacent to the licensed premises occurring between May 1, 2010 and April 18, 2012 involving minors, assaults and drugs. The Objection Letter also stated:

> In April 2010, the [Bureau] issued a warning … [warning letter] to conduct properly your establishment as your license liquor (*sic*) and/or malt beverages is a privilege that can be rescinded.[3] Failure to comply with the Pennsylvania [l]aws governing the sale of alcohol[ic] beverages could result in denial of a subsequent license renewal. Since said warning, nineteen (19) incidents of minors, assaults and drug[s] were reported by the Bethlehem City Police Department.

Any of the above-stated reasons is sufficient in and of itself to warrant non-renewal of your license.

Reproduced Record (R.R.) at 11a–12a. By May 9, 2012 letter, Licensee was notified that a hearing would be held before a hearing examiner on May 31, 2012 relative to the Bureau's objections. At the May 31, 2012 hearing, Licensing presented evidence of 11 incidents of misconduct at or near Licensee's premises that included public drunkenness, assaults, fights, intoxicated minors and unconscious patrons. Licensing also presented Citation No. 08–1427, which charged Licensee with violating Section 5 of the Pennsylvania Human Relations Act[4] by conducting a "Ladies Night" on April 4, 2008, whereby female patrons were admitted free of charge and were offered drinks at a reduced price, while male patrons were charged admission and full drink prices. Licensee admitted the charge and paid a $100.00 fine. Based upon the evidence presented to the hearing examiner, she recommended that the PLCB refuse to renew Licensee's license. On August 8, 2012, the PLCB refused to renew the License.

■ Licensee appealed to the trial court, which held a *de novo* hearing on December 19, 2012, during which the PLCB's hearing record was admitted, and Licensee's owner/manager James D. Paey (Mr. Paey) testified about not receiving the April 2010 warning letter and about the

---

1. Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §§ 1–101—10–1001.

2. Restaurant liquor licenses cover a two-year period. 40 Pa.Code § 3.2(a). Renewal applications are to be filed every two years. 47 P.S. § 4–470.

3. When Licensee applied to renew its License for the *prior* licensing period—May 1, 2010 through April 30, 2012—Licensing conducted a preliminary review of Licensee's License history. During its evaluation, Licensing became aware of fights, an assault by bouncers

and a minor at Licensee's premises. Although the PLCB approved Licensee's renewal application, it warned Licensee in an April 2010 warning letter that Licensee must take steps, including working with law enforcement, to prevent future Liquor Code violations and other inappropriate activities in or around its premises, or else further action would be taken against the License.

4. Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. § 955 (relating to unlawful discriminatory practices).

measures Licensee took before August 2012 to prevent misconduct at its premises. On January 3, 2013, the trial court denied Licensee's appeal. Licensee appealed to this Court.[5]

Licensee first argues that it was prejudiced because it did not receive the April 2010 warning letter. When Licensee applied to renew its License for the licensing period May 1, 2010 through April 30, 2012, Licensing conducted a preliminary review of Licensee's licensing history and purportedly issued an April 21, 2010 warning letter which stated:

> After careful consideration of your current and prior operating history, the [PLCB] has decided to approve your application. . . . However, the decision to renew your license does not diminish the serious nature of the allegations of fights, an assault by bouncers and a minor reported by the Bethlehem Police Department during the time [from] May 2008 to [the] present.
>
> This letter serves as a warning that you, as a licensee, must take affirmative steps to prevent violations of the Liquor Code and/or prevent employees and patrons from engaging in inappropriate activities in and around your premises through increased cooperation with the Bethlehem Police Department and the Bureau of Liquor Control Enforcement of the Pennsylvania State Police [BLCE] in order to retain your licensing privilege. Failure to do so could result in further action against your licensed business.

R.R. at 14a. The April 2010 warning letter also declared: "Pending issuance of a formal license, this letter constitutes your authority to dispense liquor and malt or brewed beverages . . . for a period of thirty (30) days effective May 1, 2010." R.R. at 14a.

Despite that the April 2010 warning letter was sent to "Paey Associates, Inc. t/a 40 Below" at 40 West Broad Street, Bethlehem, which is the address Licensee provided to Licensing, and is the same address to which the Bureau sent Licensee's 2012 Objection Letter and notices, the trial court found that "Licensee did not receive the April 21, 2010 [warning] letter." R.R. at 429a. The trial court concluded, however, that "Licensee's failure to receive the [PLCB]'s April 2010 warning letter did not prejudice him in the within matter." [6]

---

5. A trial court reviewing a decision of the PLCB not to renew a liquor license hears the matter *de novo*, and may sustain, alter, modify or amend the PLCB's order even when it is based upon the same evidence presented before the PLCB. Section 464 of the Liquor Code, 47 P.S. § 4–464; *U.S.A. Deli, Inc. v. Pennsylvania Liquor Control Bd.*, 909 A.2d 24 (Pa.Cmwlth.2006). "Our review in a liquor license renewal case is limited to a determination of whether the trial court's findings of fact are supported by substantial evidence, whether it abused its discretion, or whether it committed an error of law." *St. Nicholas Greek Catholic Russian Aid Soc'y v. Pennsylvania Liquor, Control Bd.*, 41 A.3d 953, 954 n. 1 (Pa.Cmwlth.2012).

6. In support of its conclusion, the trial court cited *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Can, Inc.*, 651 A.2d 1160 (Pa.Cmwlth.1994) (*Can, Inc.*). In *Can, Inc.*, although the BLCE sent violation notices to the licensee via regular and certified mail in accordance with Section 471 of the Liquor Code, 47 P.S. § 4–471, both were mis-delivered to another licensed premises. The licensee argued that the certified mailing requirement in Section 471 of the Liquor Code (relating to BLCE enforcement actions), was mandatory, and because the notice did not reach the licensee, such fatal defect required dismissal of the citation. Ultimately, however, the licensee received the citations underlying the notices, and it had the opportunity to prepare and present a defense. The BLCE argued: "Thus, [the licensee] has not been prejudiced here by his alleged failure to have received the notice of violation letter, which serves the limited purpose of providing a licensee with warning that his activities have been under investigation and that his license may be in danger." *Can, Inc.*, 651

First, there exists no statutory or judicial mandate that Licensing issue a licensee a written reminder to operate lawfully. Despite the April 2010 warning letter, Licensing renewed Licensee's May 1, 2010 License. Contrary to Licensee's contention, no due process was required here.

> Due process is a flexible concept and imposes only such safeguards warranted by the situation. Although notice is essential to due process, due process notice requirements are non-technical. Adequate notice for purposes of procedural due process consists of, at a minimum, a sufficient listing and explanation of the charges. The meaningful opportunity to be heard requirement of procedural due process entails an appropriate hearing. In assessing an alleged denial of procedural due process, demonstrable prejudice is a key factor.

*Moore v. Dep't of Transp., Bureau of Motor Vehicles*, 19 A.3d 1200, 1204 (Pa. Cmwlth.2011) (citations omitted).

■ Section 470(a.1)(4) of the Liquor Code authorizes Licensing to object to a renewal application, *inter alia*, "due to the manner in which [the] . . . licensed premises was operated while the licensee . . . [was] involved with that license." 47 P.S. § 4–470(a.1)(4). Under Section 470(a.2) of the Liquor Code, the PLCB may refuse to renew a license only after the Bureau gives the licensee "at least ten days' notice, stating the basis for the objection[.]" 47 P.S. § 4–470(a.2). The due process required by Section 470 of the Liquor Code was met by the April 2012 Objection Letter. There is no similar requirement for the April 2010 warning letter where the PLCB renewed the License but warned Licensee that it must operate lawfully.

There is also no merit to Licensee's claim that the Commonwealth Court in

*Can, Inc.* mandated the PLCB to send the April 2010 warning letter by certified mail. *See* Licensee Br. at 15. *Can, Inc.* involved Section 471(a) of the Liquor Code, which expressly requires the BLCE to send violation notices in *enforcement actions* "by registered mail." Section 470, relating to *license renewals*, does not have a similar registered mail requirement. Moreover, in *Can, Inc.*, this Court expressly "decline[d] to legislate an actual notice requirement where the General Assembly failed to act." *Can, Inc.*, 651 A.2d at 1164. Thus, it is clear that the PLCB was not directed by the Commonwealth Court to use certified mail to send the April 2010 warning letter.

■ Second, Licensee suffered no prejudice. The April 2010 warning letter addressed activity that took place on or near Licensee's premises during licensing period May 1, 2010 through April 30, 2012 for which Licensee's License was renewed. The April 2010 warning letter did not in any manner discuss the May 1, 2012 through April 30, 2014 licensing period at issue here. However, to the extent the April 2010 warning letter impacts the 2012 licensing period, this Court has held that a party's full participation in a trial court's *de novo* hearing, as was the case here, will cure a prior notice deficiency. *Appeal of Concord Ranch, Inc.*, 134 Pa.Cmwlth. 131, 578 A.2d 1339 (1990); *Locy v. Pennsylvania Liquor Control Bd.*, 125 Pa.Cmwlth. 481, 557 A.2d 1164 (1989).

The April 2010 warning letter notified Licensee to take steps to prevent the types of activities—fights, assaults, and minors on the premises—between May 2008 and April 2010 about which the Bethlehem Police Department notified Licensing. Licensee here claims it was unaware of those

A.2d at 1164. Relying on cases that held proof of certified mailing constitutes sufficient compliance with the statute, this Court ruled

that even though the licensee did not receive *actual* notice, Section 471's certified mailing requirement was satisfied.

incidents and, therefore, the 2012 Objection Letter was a "ton of bricks" dropped on him. Licensee Br. at 15. However, Pennsylvania law is clear that a licensee is strictly liable for violations of the Liquor Code, and may also be held accountable for non-Liquor Code violations, if it can be established that there was a pattern of illegal activity on the licensed premises about which the licensee knew or should have known, and the licensee failed to take substantial steps to prevent such activity. 47 P.S. § 4–470(a.1); *Pennsylvania Liquor Control Bd. v. TLK, Inc.*, 518 Pa. 500, 544 A.2d 931 (1988). Because the incidents included an assault by bouncers and involved the local police, they were or should have been known by Licensee and were a matter of public record. Accordingly, Licensee either knew or should have known of the incidents referred to in the April 2010 warning letter.

This Court has held: "One who accepts such license must be deemed to consent to all proper conditions and restrictions which have been or may be imposed by the legislature in the interest of public morals or safety." *Hyland Enters., Inc. v. Pennsylvania Liquor Control Bd.*, 158 Pa. Cmwlth. 283, 631 A.2d 789, 791 (1993). Having held the subject License since October 2006, Licensee is obligated to know, even without the April 2010 warning, that it must prevent violations of the Liquor Code and/or prevent employees and patrons from engaging in inappropriate activities in and around its premises, or risk losing its License. Licensing was not required to issue, and Licensee certainly should not have needed a written reminder to operate lawfully. Thus, Licensee was not prejudiced because it did not receive the April 2010 warning letter.

■ Licensee next argues that inadmissible hearsay was admitted at the trial court hearing. Licensee specifically ar-

gues that the trial court's decision was based on police reports which "must then be cleaned of any further hearsay." Licensee Br. at 20. Hearsay is generally inadmissible in any court proceeding. *D'Alessandro v. Pennsylvania State Police*, 594 Pa. 500, 937 A.2d 404 (2007); Pa.R.E. 802. "[Police] incident reports constitute hearsay, because they contain out-of-court statements offered to prove the truth of the matters asserted therein." *First Ward Republican Club of Phila. v. Pennsylvania Liquor Control Bd.*, 11 A.3d 38, 44 (Pa.Cmwlth.2010). However, Section 505 of the Administrative Agency Law provides: "Commonwealth agencies shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonably probative value may be received...." 2 Pa.C.S. § 505. Based upon that rule, the Pennsylvania Supreme Court has held that "hearsay evidence may generally be received and considered during an administrative proceeding." *D'Alessandro*, 594 Pa. at 512, 937 A.2d at 411. Yet, even before an administrative agency, "it is well-settled that hearsay evidence, properly objected to, is not competent evidence to support a determination of an agency." *Sule v. Phila. Parking Auth.*, 26 A.3d 1240, 1243 (Pa.Cmwlth.2011).

The trial court in this case specifically found:

68. The police reports offered into evidence by the [PLCB] were properly authenticated at the time of the hearing.

69. The police reports offered by the [PLCB] at the hearing on May 31, 2012 were admissible pursuant to 42 Pa. C.S.[ ] § 6104. The observations of the officers recorded therein were accepted by this Court in accordance therewith.

70. Statements recorded in the police reports which were made by Licensee's security personnel were also accepted by

this Court, in accordance with Pa.R. E. 803(25)(D) and Pa.R.E. 803(2).[7]

R.R. at 436a–437a.

Section 6104 of the Judicial Code provides:

(a) General rule.—A copy of a record of governmental action or inaction authenticated as provided in [S]ection 6103 [8] (relating to proof of official records) shall be admissible as evidence that the governmental action or inaction disclosed therein was in fact taken or omitted.

(b) Existence of facts.—A copy of a record authenticated as provided in [S]ection 6103 disclosing the existence or nonexistence of facts which have been recorded pursuant to an official duty or would have been so recorded had the facts existed shall be admissible as evidence of the existence or nonexistence of such facts, unless the sources of information or other circumstances indicate lack of trustworthiness.

42 Pa.C.S. § 6104.

■ This Court has held that police incident reports introduced at a PLCB hearing are not admissible under the official records exception to the hearsay rule set forth in Sections 6103 and 6104 of the Judicial Code **if** the proffering officer does not attest to the official copy, or provide a certificate verifying that he has custody of the original. *First Ward Republican Club of Phila.* Because the Bethlehem police officers did not attest to the official copies of the proffered reports, and did not certify that they had custody of the original reports, the reports were inadmissible under Sections 6103 and 6104 of the Judicial Code, and the trial court erred by admitting them on that basis.

■ However, Section 6108(b) of the Uniform Business Records as Evidence Act (Act), 42 Pa.C.S. § 6108(b), states:

A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

---

7. Pa.R.E. 803 provides, in pertinent part:

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

. . . .

(2) Excited Utterance. A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused.

. . . .

(25) An Opposing Party's Statement. The statement is offered against an opposing party and:

. . . .

(D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; . . . .

8. Section 6103(a) of the Judicial Code states:

(a) General rule.—An official record kept within this Commonwealth by any court, magisterial district judge or other government unit, or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by that officer's deputy, and accompanied by a certificate that the officer has the custody. The certificate may be made by any public officer having a seal of office and having official duties with respect to the government unit in which the record is kept, authenticated by the seal of that office, or if there is no such officer, by:

(1) The Department of State, in the case of any Commonwealth agency.

(2) The clerk of the court of common pleas of the judicial district embracing any county in which the government unit has jurisdiction, in the case of any government unit other than a Commonwealth agency.

42 Pa.C.S. § 6103(a).

42 Pa.C.S. § 6108(b). This Court has held:

> Section 6108 of the [Act] was enacted to create an additional exception to the hearsay rule in circumstances where a record of an act, a condition, or an event was made in the regular course of business, at or near the time of the act, condition, or event, and where the sources of information, method, and time of preparation were such as to justify its admission. Under this exception, ... if a qualifying witness can provide sufficient information relating to the preparation and maintenance of the records to justify the presumption of trustworthiness for the business records exception, a sufficient basis is provided to offset the hearsay character of the evidence and it is not necessary to produce either the preparer or the custodian of the record at the time the entries were made. So long as the *authenticating witness* can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness of the business records of a company, a sufficient basis is provided to offset the hearsay character of the evidence.

*First Ward Republican Club of Phila.*, 11 A.3d at 45–46 (citations omitted). Based upon the above rule, if the testifying officer responded to the events described in the police report, prepared or reviewed the reports, and the reports were maintained by the department in the regular course of business, the police report comes within the business record exception to the hearsay rule, and the contents thereof may be admissible.

Here, the Bethlehem police officers who created the incident reports attested to preparing them. Officers Karavoulias and Lamana testified as to how the reports are prepared, reviewed and maintained in the regular course of the department's duties. *See* R.R. at 203a–204a, 229a–230a. In the instances in which the report's author was not available to testify, Officer Lamana testified that he had reviewed and approved them in the normal course of his responsibilities. In addition the authoring officers specifically testified to their firsthand knowledge about 9 of the 11 proffered police incidents with reports:

- May 15, 2010, 1:12 a.m.—Bethlehem Police Officer Matthew Laxton testified that he observed an intoxicated man in "the side parking lot" at Licensee's premises with his pants undone and liquid running on the ground between his legs that appeared to be urine. Licensee's employees were not at the scene. Officer Laxton charged the man with public drunkenness. R.R. at 94a–109a.

- October 3, 2010, 1:55 a.m.—Officer Charles Weigold testified that, based on reports that a female patron was struck by a male patron on the sidewalk just outside Licensee's premises, he charged the male patron with harassment. The victim testified that she was attempting to calm the male patron after an argument inside Licensee's premises, and he punched her in the face and ran away. The victim's testimony was corroborated by another witness. Neither the victim nor the witness recalled seeing Licensee's security outside the premises. R.R. at 111a–123a.

- October 23, 2010, 2:08 a.m.—Officer John Casella testified that he observed an agitated, angry and visibly intoxicated man shouting obscenities and threatening a crowd of over 20 patrons leaving Licensee's premises at closing time. He charged the man with public drunkenness and disorderly conduct. Officer Casella did not recall seeing any of Licensee's staff outside at the time. R.R. at 123a–132a.

- November 13, 2010, 1:46 a.m.—Report of criminal mischief in the alley behind 40 West Broad Street after being ejected from the premises led to charges against a minor male with public drunkenness, disorderly conduct, criminal mischief, age misrepresentation and alcohol purchase. R.R. at 25a–30a, 135a–136a, 140a. Reporting Officer Russell Lande was unavailable for the hearing. R.R. at 140a–141a. Officer John Lamana testified that he reviewed and approved Officer Lande's report. R.R. at 230a–231a.

- March 18, 2011, 2:01 a.m.—Officer Rob Hoppes testified that he and Officer William Audelo were dispatched to Licensee's premises for an assault of a female inside Licensee's premises that had occurred approximately an hour earlier. Based upon a report of Licensee's security that an altercation occurred, and Officer Hoppes' observation of a clump of hair on the dance floor, Officer Audelo charged one suspect with harassment and disorderly conduct and another with harassment, disorderly conduct and underage drinking. R.R. at 47a–56a, 147a–157a. Officer Audelo is unavailable due to his deployment in Afghanistan. R.R. at 148a–149a. Approving Officer Edward Swartley is retired. R.R. at 133a. Officer Hoppes drafted the report supplement. R.R. at 53a, 149a. Officer Hoppes testified that he made Mr. Paey aware of this event. R.R. at 154a.

- April 23, 2011, 1:30 a.m.—Officer Bronson testified that he and Officer Hoppes were dispatched to assist an unconscious minor female in front of 40 West Broad Street. Officer Bronson observed the visibly intoxicated female in the vestibule of the storefront just east of Licensee's door. Due to her conditions she was taken by ambulance to the hospital. The female's boyfriend said they were asked to leave Licensee's premises after an altercation inside. Officer Bronson did not recall Licensee's employees being outside while he was there. R.R. at 157a–165a.

- June 18, 2011, 1:32 a.m.—The police communications center (No. BC–11–27062) became aware of an incident at 40 West Broad Street which was investigated by several officers. Officer McGlaughlin testified that she was the first officer to arrive at 40 West Broad Street following a report of two men trying to regain entrance to the licensed premises after they had been removed. R.R. at 41a. Upon her arrival, Licensee's security pointed out the two men walking away from the premises, and she went after them on foot. Ultimately, the two men were apprehended. One male was charged with disorderly conduct and resisting arrest, and another was charged with disorderly conduct. The police report was authored by Officer Lande. It was approved by Officer John Lamana, who also supplemented the report based upon his work at the scene. Officer Lamana testified that security told him about an incident inside Licensee's premises that night involving two brothers who were ejected. R.R. at 31a–41a, 140a–141a, 222a–234a. The report reflects that an officer spoke to Mr. Paey about the incident. R.R. at 35a–36a.

Also on June 18, 2011, simultaneously with the prior reported incident, but separately recorded (No. BC–11–227074)—Officer McGlaughlin testified that she was the first officer to arrive at 40 West Broad Street for two men trying to regain entrance to the licensed premises after they had been removed. Upon their arrest, one suspect asked her to give his belongings to a female outside. While speaking to the female, Officer McGlaughlin detected that she was intoxicated, and was wearing an under–21 wrist band from Licensee's premises.

The female was charged with underage drinking. Officer McGlaughlin testified that the report of the males trying to get inside was made by Licensee's security. She found Licensee's employees cooperative. R.R. at 205a–214a.

• June 19, 2011, 1:17 a.m.—Officer Karavoulias and Officer Audelo were dispatched to 40 West Broad Street for a report of an assaulted female. Officer Karavoulias testified that, upon his arrival, he observed people scattering outside the club. One of Licensee's bouncers told Officer Karavoulias that as he was breaking up a fight on the dance floor inside Licensee's premises, a man punched the female in the head several times. The male was cited for harassment. R.R. at 200a–205a.

• July 16, 2011—Steven Margeson testified that while dancing with a friend inside Licensee's premises, a group of 6 males began an argument with them. Although Licensee's security broke it up, as he went to sit down, one of the males punched him in the eye. R.R. at 142a–146a.

• October 1, 2011, 2:05 a.m.—Officer McGlaughlin testified that due to her experience of chaos outside Licensee's premises at closing time, she was patrolling on foot trying to clear out crowds leaving the premises when she observed four males punching each other. As she approached them, another male ran past her, jumped on the others and also started punching. She arrested that male for disorderly conduct. Officer McGlaughlin testified that there were no Licensee bouncers in the area of the fight. R.R. at 214a–220a.

• October 29, 2011, 2:04 a.m.—Report of public drunkenness at 40 West Broad Street led to charges for disorderly conduct and public drunkenness. R.R. at 42a–46a, 140a–141a.

Of the 11 reports admitted, all of them except for the November 13, 2010 and October 29, 2011 reports were supported by the reporting officer's firsthand account of the events depicted therein. Although the trial court made specific findings based upon the contents of all the admitted reports, and relied upon them in reaching its decision, it erred only by relying on facts contained in the October 29, 2011 report. *See* R.R. at 432a–433a, 436a. The November 13, 2010 report was drafted by Officer Lande, but Officer Lamana testified that he reviewed and approved it in the regular course of his duties. *See* R.R. at 230a. Officer Lamana, as the authenticating witness, provided sufficient information relating to the preparation and maintenance of the report to justify a presumption of its trustworthiness. *See* R.R. at 229a–230a. However, since there was absolutely no such evidence provided for the October 29, 2011 incident report, the trial court should not have considered it at all. Accordingly, only the October 29, 2011 report was inadmissible and the trial court erred by considering its contents relative to License's renewal application. Based on Section 6108 of the Act, rather than Section 6104 of the Judicial Code, the trial court properly considered all but the October 29, 2011 police report.

Licensee next argues that the police incidents did not establish a pattern of illegal activity at Licensee's premises sufficient for the PLCB to refuse to renew its License. Licensee specifically avers that there is a difference between police activity and illegal activity, and it is insufficient to merely plead police activity in order to endanger a liquor license, since strict liability does not apply to Crimes Code violations.

"[R]enewal of a liquor license is not automatic." *Goodfellas, Inc. v. Pennsylvania Liquor Control Bd.*, 921 A.2d 559, 564

(Pa.Cmwlth.2007). In Section 104(a) of the Liquor Code, 47 P.S. § 1–104(a), the General Assembly granted the PLCB broad police powers in its duty to protect the public welfare, health, peace and morals of the citizens of the Commonwealth. In order for the PLCB to carry out this duty, the General Assembly made clear in Section 470(a.1) of the Liquor Code:

The Director of the Bureau of Licensing may object to and **the [PLCB] may refuse a properly filed license application:**

(1) if the licensee, its shareholders, directors, officers, association members, servants, agents or employes have violated any of the laws of this Commonwealth or any of the regulations of the [PLCB];

. . . .

(4) **due to the manner in which this** or another **licensed premises was operated** while the licensee, its shareholders, directors, officers, association members, servants, agents or employes were involved with that license. When considering the manner in which this or another licensed premises was being operated, **the [PLCB] may consider *activity* that occurred on or about the licensed premises** or in areas under the licensee's control if the activity occurred when the premises was open for operation and if there was a relationship between the activity outside the premises and the manner in which the licensed premises was operated. The [PLCB] may take into consideration whether any substantial steps were taken to address the activity occurring on or about the premises.

47 P.S. § 4–470(a.1) (emphasis added).

█ The law is well-established that a licensee is strictly liable for Liquor Code violations, and may also be held accountable for non-Liquor Code violations, like those under the Crimes Code, if it can be established that there was a pattern of illegal activity on the licensed premises about which the licensee knew or should have known, and the licensee failed to take substantial steps to prevent such activity. *TLK, Inc.* Although the *TLK, Inc.* Court referenced "illegal activity," Section 470(a.1) of the Liquor Code makes clear that the PLCB merely consider "activity" that occurred on or about the licensed premises in determining whether a licensee abused its privilege of holding a license. Even assuming, *arguendo*, that "illegal" activity is required to meet the standard, since nearly every incident presented by the police in this case involved activity that resulted in criminal charges, that standard was met.

█ At the May 31, 2012 PLCB hearing, in addition to Citation No. 08–1427, there was substantial evidence presented which supported the trial court's conclusion that there was a pattern of illegal activity at Licensee's premises sufficient for the PLCB to refuse to renew Licensee's License. In the 18 months between May 2010 and October 2011 (excluding October 29, 2011), Licensee's premises was the scene of 10 incidents of misconduct requiring police intervention. Three of the incidents (March 18, 2011, June 19, 2011, July 16, 2011) occurred inside Licensee's premises. The remaining 7 incidents occurred outside, but either stemmed from conduct that began inside the premises or occurred immediately adjacent to Licensee's premises. Finally, all 10 incidents occurred within 45 minutes of Licensee closing, or as Licensee was closing.[9]

9. With the exception of the May 15, 2010 1:15 a.m. and June 19, 2011 1:17 a.m. incidents, all of the others occurred within 30 minutes before closing, or within a few minutes after closing (i.e., 1:55 a.m., 2:08 a.m., 1:46 a.m., 2:01 a.m., 1:30 a.m., 1:32 a.m., 2:05 a.m.).

■ The trial court has the same discretion over liquor license renewal cases as the PLCB. *U.S.A. Deli, Inc. v. Pennsylvania Liquor Control Bd.*, 909 A.2d 24 (Pa. Cmwlth.2006). This Court has held:

> An abuse of discretion is defined as a misapplication of the law, a manifestly unreasonable exercise in judgment, or a final result that evidences partiality, prejudice, bias, or ill-will. When there is no rational support in the record for a finding of fact, there has been a manifestly unreasonable error in judgment and, therefore, an abuse of discretion.

*I.B.P.O.E. of W. Mount Vernon Lodge 151 v. Pennsylvania Liquor Control Bd.*, 969 A.2d 642, 648 (Pa.Cmwlth.2009) (citations omitted). Based upon the evidence in this case, the trial court concluded there was "a pattern of criminal activity at the licensed premises" warranting the PLCB's non-renewal of Licensee's License. R.R. at 440a.

There is no magic number or type of incident or span of time that constitutes a pattern of conduct to require the PLCB to refuse to renew a liquor license. Notably, based upon its broad discretion in reviewing license renewals, had the trial court based its decision on nothing more than Citation No. 08–1427, this Court would be hard-pressed to disturb the trial court's conclusion that Licensee abused the privilege of holding the License. However, the trial court was also presented with uncontradicted evidence that at least 10 police incidents took place at or near Licensee's premises. Because there was substantial evidence to support the trial court's determination that there was a pattern of illegal conduct at Licensee's premises sufficient for the PLCB to refuse to renew the License, and there being no abuse of discretion, this Court will not disturb the trial court's order.

Licensee next argues that the evidence supporting a connection between illegal activity and the licensed premises was insufficient for the PLCB to refuse to renew the License. The circumstances surrounding Citation No. 08–1427 directly relate to Licensee's operation. And, as Licensee apparently concedes, the 3 incidents reported to have occurred inside Licensee's premises are also directly related to Licensee's operation. *See* Licensee' Br. at 19. As for the incidents that occurred outside Licensee's establishment, when assessing the manner in which a licensed premises has been operated, Section 470(a.1)(4) of the Liquor Code expressly authorizes the PLCB, and the trial court on appeal, to

> consider activity that occurred on or about the licensed premises or in areas under the licensee's control if the activity occurred when the premises was open for operation and if there was a relationship between the activity outside the premises and the manner in which the licensed premises was operated.

47 P.S. § 4–470(a.1)(4).

As stated previously, all of the incidents to which the officers testified occurred just before or at Licensee's closing time while patrons were leaving. Thus, the "premises was open for operation" condition was met. The "relationship between the activity outside the premises and the manner in which the licensed premises was operated" condition was also met.

First, all of the incidents were reported to have occurred at 40 West Broad Street, which is Licensee's record address. Although Mr. Paey testified that the front of Licensee's premises has been confused with adjacent storefronts where the U.S. postal service is concerned, Licensee offered no evidence that there is another business open and operating adjacent to Licensee's premises between 1:15 a.m. and 2:08 a.m. that could be responsible for the people in the area, or the activity taking place at that time. *See* R.R. at 391a–394a. In fact, Mr. Paey told the trial court that

the rest of the building in which the licensed premises sits has been vacant for at least 10 years. *See* R.R. at 393a–394a.

Second, although the incidents of October 3, 2010 (female patron struck on sidewalk out front following altercation inside); April 23, 2011 (ejected unconscious intoxicated minor in adjacent vestibule); June 18, 2011 (problems with 2 ejected patrons and intoxicated minor wearing Licensee's wristband); and November 13, 2010 (intoxicated minor causing damage; security guards admitted ejecting him) occurred outside Licensee's premises, they involved patrons who had been ejected from Licensee's premises. The incidents of October 23, 2010 (agitated man threatening exiting patrons) and October 1, 2011 (men fighting as patrons exited) occurred as crowds of patrons exited Licensee's premises at closing time. Licensee here would have the trial court believe that once it removes a problem from inside its premises, its responsibilities end. Although Mr. Paey testified that he always has 2 bouncers at the door, he did not indicate that they patrol outside. R.R. at 402a. He also claimed that Licensee had an outside camera but it was torn down. He reported that he reset the camera, but his testimony is unclear when he did so. R.R. at 402a. Nevertheless, Section 470(a.1)(4) of the Liquor Code makes clear that licensees are not permitted to push their problems out the front door and disregard them. Rather, they must monitor what goes on outside and immediately adjacent to their premises as an extension of their operations.

Finally, although the May 15, 2010 (man urinating) incident did not seem to have a direct relationship with Licensee's operation, it occurred in "the side parking lot." R.R. at 101a. Licensee offered no evidence that the parking lot was not under its control. Because the lot is adjacent to Licensee's premises and had cars in it while the licensed premises was the only business open and operating, it was reasonable to conclude that the parking lot was either owned by Licensee or under its control at that time. *See* R.R. at 101a. Because there was substantial evidence to support the trial court's determination that there was a connection between the illegal activity and Licensee's operation sufficient for the PLCB to refuse to renew the License, and there being no abuse of discretion, this Court will not disturb the trial court's order.

Licensee finally argues that a single 2008 citation for a "Ladies Night" was insufficient evidence for the PLCB to refuse to renew the License. In concluding that this License should not be renewed, the trial court did not specify that Licensee's 2008 citation was the sole basis. Rather, it concluded that the evidence established Licensee abused its privilege of holding the License. Nevertheless, Pennsylvania law makes clear that the PLCB may refuse to renew a license based on a single citation regardless of when it occurred.

Section 470(a.1) of the Liquor Code states, in relevant part:

> The Director of the Bureau of Licensing may object to and the [PLCB] may refuse a properly filed license application:
>
> . . . .
>
> (2) if the licensee, its shareholders, directors, officers, association members, servants, agents or employes have **one or more adjudicated citations** under this . . . license. . . .

47 P.S. § 4–470(a.1) (emphasis added). This Court has held that a single citation can form a sufficient basis upon which the PLCB may refuse to renew a license. *Hyland Enters., Inc.* This Court has also consistently ruled that the PLCB may consider all of a licensee's violations "regardless of when they occur." *Pennsylvania*

*Liquor Control Bd. v. Bartosh,* 730 A.2d 1029, 1033 (Pa.Cmwlth.1999). Because the single 2008 citation is sufficient evidence for the PLCB to refuse to renew the License, and there being no abuse of discretion, we will not disturb the trial court's order.

For all of the above reasons, the trial court's order is affirmed.

## ORDER

AND NOW, this 4th day of October, 2013, the Northampton County Common Pleas Court's January 3, 2013 order is affirmed.