# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

WSM, Inc. t/a Kicker's Pub and :
Restaurant, :
     Appellant :
         :
     v.    : No. 90 C.D. 2017
         : Argued:  September 11, 2017
Pennsylvania Liquor Control Board :


BEFORE:  **HONORABLE RENÉE COHN JUBELIRER,** Judge
     **HONORABLE JOSEPH M. COSGROVE,** Judge
     **HONORABLE JAMES GARDNER COLINS,** Senior Judge


<u>**OPINION NOT REPORTED**</u>


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**     **FILED:  October 5, 2017**

   WSM, Inc. t/a Kicker's Pub and Restaurant (Licensee) appeals from a January 19, 2017 Order of the Court of Common Pleas of Northampton County (trial court) denying Licensee's appeal and affirming an Order of the Pennsylvania Liquor Control Board (Board), which refused to renew Hotel Liquor License No. H-335, which Licensee held.  The trial court found Licensee abused the privilege of holding a hotel liquor license by receiving several citations and failing to comply with a Conditional Licensing Agreement (CLA).  Licensee contends the trial court erred by failing to analyze whether certain incidents of police activity were related to Licensee's operations, whether Licensee knew or should have known of the incidents, and whether Licensee took substantial remedial measures to address the

incidents. Licensee also argues the Board abused its discretion under its conditional licensing powers. After review, we find no error or abuse of discretion, and accordingly, affirm.

## Background

Licensee operates an establishment known as Kicker's Pub and Restaurant, which is located at 204 West Main Street, Bath, Northampton County, Pennsylvania, and was the holder of Hotel Liquor License No. H-335. On January 27, 2014, Licensee filed a renewal application for the period of May 1, 2014, through April 30, 2016. By letter dated April 18, 2014, the Board conditionally renewed the license pending disposition of an outstanding citation. In December 2015, after the citation was ultimately sustained, the Board's Bureau of Licensing (Bureau) notified Licensee that it objected to renewal of the license, citing the most recent citation, as well as five prior citations; "four [] incidents of disturbances at or immediately adjacent to . . . [the] establishment"; and breach of two provisions of the CLA – failure to remain compliant with the Responsible Alcohol Management Program (RAMP) and failure to maintain adequate security. (Reproduced Record (R.R.) at 113a-14a.) The Bureau subsequently issued an amended objection letter, dated January 8, 2016, which asserted two additional violations of the CLA – failure to maintain and enforce a written barred patrons list and failure to meet with the police on a semi-annual basis to discuss operations.

On January 19, 2016, a hearing examiner conducted a hearing on the Bureau's objections to Licensee's renewal application.[1] At the hearing, officers of the

---

[1] The transcript of the hearing, along with the accompanying exhibits, was introduced at the *de novo* hearing before the trial court. Because the trial court is free to make its own findings of fact, to which we are bound provided they are supported by substantial evidence, *S & B*

2

Colonial Regional Police Department testified concerning two incidents they investigated at or near the licensed premises. The first incident occurred on October 23, 2012. The officer testified that, while on routine patrol, he observed a female being pulled out of the licensed premises by one male and pushed out of the licensed premises by another male. The officer further observed one male and the female arguing in an alley adjacent to the premises. Upon investigation, the officer found the male and female were under the influence of alcohol. The female cooperated with police and was arrested for public drunkenness. The male, meanwhile, was noncompliant and antagonistic and was later removed from the licensed premises and charged with disorderly conduct. The male was identified as an individual on the barred patron list, who, according to Licensee, was permitted to enter the premises to purchase food but was not served alcohol. (Trial Ct. Op., Findings of Fact (FOF) ¶¶ 43-49.)

Another officer testified that on February 12, 2013,[2] he was dispatched to the licensed premises for a report of a female who possibly overdosed. Upon arrival, he found the female was now conscious but intoxicated. He did not observe any controlled substances on or about her person or in the premises. (*Id.* ¶¶ 50-51.)

In addition to the testimony of the officers, the Board introduced copies of six adjudicated citations, which include:[3]

- Citation No. 12-1433, which was issued on September 26, 2013, and adjudicated on October 15, 2015. The citation alleged that Licensee

*Restaurant, Inc. t/a The Woodlands v. Pennsylvania Liquor Control Board*, 114 A.3d 1106, 1111 (Pa. Cmwlth. 2015), we cite to the trial court's opinion summarizing the evidence from the proceeding before the hearing examiner, rather than the Board's opinion.

[2] The trial court opinion incorrectly states the incident occurred on February 13, 2016.

[3] The citations are listed in the order in which they appear in the Reproduced Record.

violated the Liquor Code[4] because it failed to adhere to the conditions of the CLA by not having security present on Friday, July 20, 2012.[5] Licensee executed a Statement of Waiver, Admission and Authorization admitting the violation and was fined $200.[6] (R.R. at 124a-25a.)

- Citation No. 10-2554, which was issued on December 13, 2010, and adjudicated on September 20, 2011. The two-count citation alleged that Licensee violated the Liquor Code by: (1) "failing to require patrons to vacate that part of the premises habitually used for the service of alcoholic beverages not later than one-half hour after the required time for the cessation of the service of alcoholic beverages"; and (2) "permitting patrons to possess and/or remove alcoholic beverages from that part of the premises habitually used for the service of alcoholic beverages after 2:30 a.m." (*Id.* at 127a.) Following a hearing, Licensee was found in violation and fined $600. (*Id.* at 127a-30a.)

- Citation No. 10-1941, which was issued on September 13, 2010, and adjudicated on September 20, 2011.[7] The citation alleged that Licensee violated the Liquor Code by "failing to require patrons to vacate that part of the premises habitually used for the service of alcoholic beverages not later than one-half hour after the required time for the cessation of the service of alcoholic beverages." (*Id.* at 131a.) Following a hearing, Licensee was found in violation and fined $400. (*Id.* at 131a-33a.)

- Citation No. 10-0806, which was issued on April 23, 2010, and adjudicated on December 15, 2011. The citation alleged that Licensee violated the Liquor Code because it failed to adhere to a number of conditions of the CLA, including failure to post required signage, failure to install exterior surveillance cameras, failure to have uniformed security present, failure to patrol the outside of the premises at least once per half-hour, and failure to timely become RAMP certified. Licensee executed a Statement of Waiver, Admission and

---

[4] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§ 1-101–10-1001.

[5] The citation also alleged a similar violation for June 16, 2012, but because this was a Saturday and the Board did not present evidence that the Licensee provided live entertainment on that date, the citation as it related to June 16, 2012, was not sustained.

[6] This was the citation that was pending at the time Licensee submitted its renewal application.

[7] The mailing date on the adjudication contains a typographical error in the year.

Authorization admitting the violation and was fined $200. (*Id.* at 134a-36a.)

- Citation No. 08-1883, which was issued on August 18, 2008, and adjudicated on December 15, 2008. The citation alleged that Licensee violated the Board's regulations by permitting amplified music to be heard outside of the premises. Licensee executed a Statement of Waiver, Admission and Authorization admitting the violation(s) and was fined $400. (*Id.* at 137a-39a.)

- Citation No. 07-0602, which was issued on March 28, 2007, and adjudicated on August 8, 2007. The citation alleged that Licensee violated the Liquor Code by allowing alcohol to be sold on a Sunday between 2:00 a.m. and 11:00 a.m. Licensee executed a Statement of Waiver, Admission and Authorization admitting the violation(s) and was fined $1,250. (*Id.* at 141a-43a.)

The Board also introduced the CLA upon which some of the citations were issued and the Bureau's objections were based. The CLA was entered into by the parties and approved by the Board in May 2009 after the Bureau objected to an earlier renewal application of Licensee. The CLA provides, in pertinent part:

a. [Licensee] shall, within ninety (90) days of the approval of this Agreement, become compliant with and **remain compliant** with the [RAMP] provisions of the Liquor Code . . . ;

b. [Licensee] shall maintain adequate security at the premises, including employment of at least one (1) trained security guard, dressed in clothing that clearly identifies such person as "security[,]"[] whose sole duty will be to act as security. Such duties shall consist of maintaining order in and immediately outside the premises, between the hours of 8:00 p[.]m. to closing time **on all Fridays and on any other evening when live entertainment is scheduled**;

c. [Licensee] shall **maintain and enforce** a written barred patrons list on the licensed premises. . . . ;

\* \* \*

5

f. [Licensee's] principal(s) shall be required to meet with the chief or another designated officer of the Colonial Regional Police Department on a **semi-annual basis** to discuss and solicit suggestions concerning the safe operation of the licensed premises.

(CLA ¶ 6(a)-(c), (f), R.R. at 119a-21a (emphasis added).) The CLA further stated that the Licensee understood "that failure to adhere to [the CLA] may result in citation . . . and/or nonrenewal of this license." (*Id.* ¶ 7, R.R. at 122a.)

Based upon the evidence presented, the hearing officer recommended that the renewal application be denied and the Board concurred, finding, *inter alia*, Licensee "failed to fulfill its responsibility as a licensee by its failure to adhere to all of the conditions in its CLA," and its history of citations and police incidents warranted non-renewal. (Board Op. at 25.)

Licensee then appealed to the trial court. In addition to accepting into evidence the record made before the hearing examiner, the trial court received additional testimony from Christopher Shala, Licensee's owner.[8] Mr. Shala testified Licensee received only one citation since 2012, when its license was last renewed. He also testified that 80 to 90 percent of his bartenders are RAMP-certified. He explained that he did not believe the CLA required security on Fridays anymore since live entertainment had been discontinued. In addition, the manager of Licensee testified that he attempted to meet with police semi-annually but was confronted with problems scheduling with police who said meeting annually was sufficient.

In the *de novo* appeal, the trial court found Licensee "failed in several regards to comply with the conditions imposed by the [CLA], which failure supports the non-renewal of its license." (Trial Ct. Op. at 11.) Specifically, the trial court found "Licensee violated the CLA by failing to adequately maintain a barred patrons list,

---

[8] Mr. Shala also testified at the hearing before the hearing examiner.

6

failing to maintain current and complete RAMP certification, failing to meet with Colonial Regional Police as directed, permitting a barred patron to enter the premises, and failing to have security personnel on duty on Friday nights." (Trial Ct. Op., Conclusion of Law (COL) ¶ 3.) In addition, the trial court found that "Licensee's extensive citation history, properly considered as a whole, supports the Board's conclusion that Licensee has engaged in a pattern of conduct warranting the non-renewal of its license." (Trial Ct. Op. at 11-12.) The trial court found the testimony of the police officers credible and persuasive, but found Mr. Shala's testimony "neither credible nor persuasive." (COL ¶¶ 4-5.) The trial court found that the Licensee "repeatedly ignored its obligation[s]" under the CLA and that the "evidence establishes that Licensee has abused the privilege of holding a hotel liquor license by receiving several citations and failing to comply with the CLA." (*Id.* ¶¶ 6-7.) Accordingly, it affirmed the Board's decision to deny renewal of the license.

Licensee appealed to this Court, contending the trial court erred in multiple respects. First, Licensee claims the trial court erred by failing to analyze whether certain incidents of police activity were related to Licensee's operations. Second, Licensee argues the trial court erred by failing to analyze whether Licensee knew or should have known of the incidents. Third, Licensee contends the trial court erred in not determining whether Licensee took substantial remedial measures to address the incidents. Lastly, Licensee argues the Board abused its discretion under its conditional licensing powers.

**Analysis**

Section 470(a.1)(4) of the Liquor Code[9] provides that "[t]he Director of the Bureau . . . may object to and the Board may refuse" to renew a license application:

> (4) **due to the manner in which this or another licensed premises was operated** while the licensee, its shareholders, directors, officers, association members, servants, agents or employes were involved with that license. When considering the manner in which this or another licensed premises was being operated, **the board may consider activity that occurred on or about the licensed premises or in areas under the licensee's control if the activity occurred when the premises was open for operation and if there was a relationship between the activity outside the premises and the manner in which the licensed premises was operated. The board may take into consideration whether any substantial steps were taken to address the activity occurring on or about the premises.**

47 P.S. § 4-470(a.1)(4) (emphasis added).

Licensee contends the trial court abused its discretion when it considered the incidents that occurred on or about the licensed premises, but did not consider whether the incidents were related to operations, whether Licensee knew or should have known of the incidents, or whether Licensee took substantial remedial measures. In its opinion issued pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure,[10] Pa. R.A.P. 1925(a), the trial court stated it did find the two

---

[9] Section 470(a.1) was added by Section 17 of the Act of December 21, 1998, P.L. 1202.

[10] Rule 1925(a)(1) provides, in pertinent part:

Except as otherwise prescribed by this rule, upon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found.

Pa. R.A.P. 1925(a)(1).

incidents to which police responded bore a relationship to operations. (Rule 1925(a) Op. at 2.) Although the trial court did not explicitly state so in its original opinion, it is apparent from a review of the trial court's decision that it did find the two police incidents were related to Licensee's operations. For instance, with regard to the October 23, 2012 incident, the trial court noted that the officer observed a female being "pulled out of the doorway" of the licensed premises, and the noncompliant male "was later removed from the licensed premises." (FOF ¶¶ 43, 47.) Both were under the influence of alcohol. (*Id.* ¶ 45.) With regard to the February 12, 2013 incident, the woman who passed out inside the licensed premises was intoxicated, according to police. (*Id.* ¶ 51.) The trial court credited the officers' testimony. (COL ¶ 4.)

The trial court, however, made no findings related to whether Licensee knew or should have known of the police incidents. A review of the record, though, shows Mr. Shala admitted to knowledge of the February 12, 2013 incident, as he testified he conducted his own investigation into the matter. (R.R. at 72a.) Furthermore, he testified he did not learn about the October 23, 2012 incident until after it occurred, but he did not specify when he received notice of the incident. (*Id.* at 67a.) It is important to note, however, that the trial court found Mr. Shala was not a credible witness. (COL ¶ 5.) Therefore, we discern no error.

Moreover, the police incidents were not the sole basis for denying the renewal application. As the trial court correctly pointed out in its Rule 1925(a) opinion, "even a complete omission of any discussion about the police activity would not have been erroneous, as there were two other bases upon which [the trial court] could and did affirm the Board's decision." (Rule 1925(a) Op. at 2.) Those other bases

include the failure to comply with the CLA and the adjudicated citations. Either basis would be sufficient to refuse the license renewal.

Under Section 470(a), "[f]ailure by the applicant to adhere to the [CLA] will be sufficient cause to form the basis . . . for the nonrenewal of the license . . . ." 47 P.S. § 4-470(a). Similarly, Section 470(a.1)(2) permits the Board to refuse an application "if the licensee . . . ha[s] one or more adjudicated citations . . . ." 47 P.S. § 4-470(a.1)(2). Moreover, if significant enough, "even a single violation can be sufficient grounds to decline to renew the license." *Goodfellas, Inc. v. Pa. Liquor Control Bd.*, 921 A.2d 559, 565 (Pa. Cmwlth. 2007). Furthermore, "[t]here is no magic number or type of incident or span of time that constitutes a pattern of conduct to require the [Board] to refuse to renew a liquor license." *Paey Assocs., Inc. t/a 40 Below v. Pa. Liquor Control Bd.*, 78 A.3d 1187, 1199 (Pa. Cmwlth. 2013). Licensee does not challenge any of the findings related to the CLA and/or citations.[11] Accordingly, to the extent the trial court should have discussed Licensee's knowledge of the police incidents, we find the failure to do so was harmless.

Licensee next claims the trial court erred in not considering whether it took substantial remedial measures. In its original opinion, the trial court recognized that Licensee made good faith attempts to meet with police, but it also carefully laid out the repeated and numerous violations of the Liquor Code and CLA that went unaddressed. The breaches of the CLA, coupled with the "extensive citation history," demonstrated to the trial court "that Licensee has engaged in a pattern of conduct warranting the non-renewal of its license." (Trial Ct. Op. at 11-12.) It is apparent from the opinion that the trial court found Licensee did little to nothing to

---

[11] It is noteworthy that Licensee executed Statements of Waiver, Admission and Authorization admitting four of the violations. Thus, Licensee could not now challenge those violations.

remedy the problems. In its Rule 1925(a) opinion, the trial court expounded on why it found little was accomplished by way of remedial measures:

> Particularly telling are two examples: First, on December 13, 2010, [Licensee] was cited for permitting patrons on the premises after the designated closing hour, after it had been cited for the same activity less than three months prior on September 23, 2010. [Licensee's] awareness of the fact that this activity was in violation of the Liquor Code was obvious from the fact that on December 13, 2010[,] an employee locked the door and refused entrance to an enforcement officer, while the patrons snuck out a rear door, once the officer's presence was noticed by the employee. Second, [Licensee] has continued to violate the [CLA] by not providing a security guard as required, despite having been cited for such failure and having been advised on more than one occasion that the [CLA] remains in effect. In so doing, [Licensee] has derided its obligation to comply with the Liquor Code and the [CLA].

(Rule 1925(a) Op. at 3-4.) Furthermore, the only evidence of remedial measures came via the testimony of Licensee's principal, Mr. Shala, which, importantly, the trial court found "neither credible nor persuasive." (COL ¶ 5.) Therefore, we cannot find the trial court abused its discretion or erred. The history of citations, many of which were repeat offenses and uncontested, provides substantial evidence for the trial court's determination that Licensee did not take substantial remedial steps to curb further problems.

Finally, Licensee argues the trial court erred in failing to analyze and discuss whether the Board abused its discretion with regard to its conditional licensing powers and claims the Pennsylvania State Police Bureau of Liquor Code Enforcement (BLCE) has sole jurisdiction over enforcement of the Liquor Code and

11

the corresponding regulations, not the Board.[12]   The Board's response to this argument is three-fold.  First, it claims the argument is waived, as it was not properly preserved on appeal.  Second, it claims Licensee is improperly seeking review of an administrative action, not the trial court's order.  Third, it contends there was no infringement on the BLCE's authority; rather, the Board was merely exercising its right to refuse renewal for violations of the Liquor Code and/or CLA, the citations of which were issued by the BLCE.  The trial court, in its Rule 1925(a) opinion, also noted that Licensee was asserting this issue for the first time on appeal.  In addition, the trial court stated that Licensee cited no authority in support of its argument and found it to be without merit.

Regardless of whether the issue is waived or not, we likewise find the argument is without merit.  The Liquor Code explicitly provides that breach of a CLA may form the basis for non-renewal.[13]  47 P.S. § 4-470(a).  Therefore, the Board did not infringe on BLCE's authority.  In fact, BLCE still exercised its authority to enforce the Liquor Code when it issued citations to Licensee for breach of the CLA. The fact that Licensee was already subject to penalty for violating the CLA also does not foreclose the Board from considering the violations.  *See I.B.P.O.E. of West Mount Vernon Lodge 151 v. Pa. Liquor Control Bd.*, 969 A.2d 642, 648 (Pa. Cmwlth. 2009) ("It is not improper for the Board to look at a series of violations of

---

[12] In its brief, Licensee devotes the majority of its discussion of this issue to whether the CLA requires security every Friday or only on Fridays in which there was live entertainment.  It urges that the CLA is ambiguous and should be construed against its drafter, the Board.  Licensee, however, admitted to violation of this provision of the CLA in Citation No. 12-1433 by executing a Statement of Waiver, Admission and Authorization.  Thus, we cannot find the Board or trial court erred in using the admitted violation against Licensee.

[13] We note that Paragraph 7 of the CLA itself also provides that failure to adhere to the terms of the CLA may result in non-renewal.  (R.R. at 121a.)

the liquor laws that have already been the subject of a penalty when deciding whether to renew a license.").

Having found that the trial court did not abuse its discretion and substantial evidence supports its decision, we affirm the trial court's Order.

_____

**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

WSM, Inc. t/a Kicker's Pub and     :
Restaurant,     :
           Appellant     :
    :
         v.     :    No. 90 C.D. 2017
    :
Pennsylvania Liquor Control Board     :

# **O R D E R**

**NOW**, October 5, 2017, the Order of the Court of Common Pleas of Northampton County, dated January 19, 2017, is **AFFIRMED**.

 

 

                                     _____

                                     **RENÉE COHN JUBELIRER,** Judge