**In re LICENSE RENEWAL APPLICA-TION OF THE QUIPPAN CLUB LI-CENSE # C–4110 LID # 1889.**

**Appeal of the Quippan Club.**

Commonwealth Court of Pennsylvania.

Submitted April 26, 2002.
Decided Aug. 29, 2002.

Craig E. Wynn, Aliquippa, for appellant.

James M. Petrascu, Harrisburg, for appellee.

Before SMITH–RIBNER, Judge, and SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

The Quippan Club appeals from an order of the Court of Common Pleas of Beaver County (trial court) which affirmed the Pennsylvania Liquor Control Board's (Board) decision denying The Quippan Club's (Club) liquor license renewal application under the Liquor Code.[1] We affirm.

The Club was issued a club liquor license by the Board for its establishment at 318–320 Jefferson Street, Aliquippa, Pennsylvania. The Club, through its president Johnnie Hill, filed an application for renewal of its current club liquor license for the license renewal period beginning July 1, 2000. Upon receipt of the application, the Board granted the Club temporary authority to operate during the pendency of the Club's application.

On June 20, 2000, the Board's Bureau of Licensing (Licensing Bureau) notified the Club by letter that it had objections to the renewal application. Specifically, the Licensing Bureau stated that it was alleged that the Club had abused its licensing privilege and, pursuant to Section 470 of the Liquor Code,[2] the Club may no longer be eligible to hold a license based upon: (1) violations of the Liquor Code relative to citation numbers 95–2452 and 94–1637; and (2) the improper conduct of the li-

---

**1.** Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §§ 1–101–8–803.

**2.** 47 P.S. § 4–470. Section 470(a.2) of the Liquor Code provides that the Board shall only refuse to renew a license application if the Licensing Bureau gives the applicant at least ten days notice, stating the basis for the objection. 47 P.S. § 4–470(a.2). Otherwise, the Board must renew the license after receiving a properly filed renewal application. *Id.* Section 470(a.1), 47 P.S. § 4–470(a.1), provides that the Director of the Licensing Bureau may object to a properly filed license application:

(1) if the licensee, its shareholders, directors, officers, association members, servants, agents or employes have violated any laws of this Commonwealth or any of the regulations of the board;

(2) if the licensee has one or more adjudicated citations;

(3) if the licensed premises no longer meets the requirements of this act or the board's regulations; or

(4) due to the manner in which the licensed premises is being operated, the board can consider activity occurring on or about the licensed premises or in areas under licensee's control if the activity occurs when the premises is open for operation and if there is a relationship between the activity outside the premises and the manner in which the licensed premises is operated. The board may take into consideration whether the licensee has taken any substantial steps to address the activity occurring on or about the premises when the premises is open for operation.

censed establishment as there have been approximately 10 incidents of disturbances at or immediately adjacent to the licensed establishment during the time period January, 1998 to the present reported to the Aliquippa Police Department including fights, assaults and disorderly operations. The Licensing Bureau further notified the Club that a hearing would be held on the foregoing objections.

On September 21, 2000, the Licensing Bureau notified the Club that an administrative hearing was scheduled for October 19, 2000. On October 5, 2000, the Licensing Bureau sent the Club an amended objection letter and notice of hearing. Therein, the Club was notified again of the October 19, 2000 hearing date and that the Club may no longer be eligible to hold a license based upon the previous stated citations and the following amended objection: the improper conduct of the licensed establishment as there have been approximately 14 incidents of disturbances at or immediately adjacent to the licensed establishment during the time period January, 1998 to the present reported to the Aliquippa Police Department including fights, assaults, disorderly operations and a person with a gun.

The administrative hearing was held on October 19, 2000 before a hearing examiner designated by the Board. The hearing examiner received evidence and accepted testimony. The hearing examiner recommended that the Board deny the renewal of the Club's liquor license. Upon reviewing the record of the proceedings, the Board, by order of January 24, 2001, refused the Club's application for renewal of its club liquor license for the term effective July 1, 2000. In a detailed opinion regarding its reasons for refusing the renewal of the club liquor license, the Board found that the Club's citation history alone was not sufficient to warrant non-renewal since the Club had only been cited twice since 1994 and the citations were not very egregious.[3] However, the Board found further that the citation history, coupled with the other activity at the licensed premises that required police intervention, evidenced an abuse of the licensing privilege by the Club. The Board found that aggregately, there were four serious incidents in 2000 and two in 1998. Of these six serious incidents, three incidents occurred after July 1, 2000. Finally, the Board found that the Club failed to demonstrate that it implemented substantial, affirmative measures to prevent the criminal activity at its premises.

The Club appealed the Board's decision to the trial court. A *de novo* hearing was held before the trial court on April 25, 2001, wherein the trial court accepted into evidence the record of the proceedings before the hearing examiner and heard further testimony from Johnnie Hill, president of the Club. After careful review of the record of the proceedings and the Board's findings of fact, the trial court specifically adopted the Board's findings and made additional findings with respect to Mr. Hill's testimony. The trial court also adopted the Board's conclusions of law and found that there was substantial evidence to support the Board's conclusion that the Club's liquor license should not be renewed. Accordingly, the trial court denied the Club's petition for appeal and sustained the Board's order refusing to renew the Club's liquor license. This appeal by the Club followed.[4]

---

**3.** One citation was for purchasing beer on credit and the other for failing to require that patrons vacate the licensed premises by 3:30 a.m.

**4.** This Court's review in a liquor license renewal case is limited to a determination of whether the trial court's findings of fact are supported by substantial evidence and wheth-

■ The first issue for our review is whether the trial court committed reversible error by considering incident reports which concern allegations of incidents occurring after July 1, 2000, the beginning date of the renewal period. The Club contends that since the license renewal period, which was the subject of these proceedings, commenced on July 1, 2000, it was inappropriate for the Board or the trial court to consider incidents which occurred subsequent to the renewal date in determining whether the Club's license should be renewed.

The Club argues further that the language of Section 470(a.2) requires the Board to renew an applicant's license unless the applicant receives at least ten days notice stating the basis for the Board's objection. The Club contends that the ten days referred to in Section 470(a.2) is the ten-day period prior to the date the license term commences. The Club contends that Section 470(a.2) clearly would not permit the Board to file objections to an application after the renewal period commenced, regardless of the dates of the incidents it might cite to oppose the application. Therefore, the Club argues, it should stand to reason that the Board's attempt to "amend" its objections by its letter of October 5, 2000 must be disregarded. The Club argues further that the Board is attempting to do by "amendment" that which it could not do in the first place— use incidents subsequent to the renewal period commencement date to argue that they should somehow be considered retroactively in the decision to renew an applicant's license.

■ Initially, we note that this Court is aware that, as remedial civil legislation, the Liquor Code is to be liberally construed to effectuate its purpose to protect the public health, welfare, peace and morals. *Hyland Enterprises, Inc. v. Pennsylvania Liquor Control Board,* 158 Pa. Cmwlth. 283, 631 A.2d 789 (1993). Moreover, this Court has stated that the purpose of the Liquor Code, as enforced by the Board, is to regulate and restrain the sale of liquor, not to promote it. *Id.*

Section 470(a.2) clearly mandates that the Board shall only refuse to renew a license application if the Licensing Bureau gives the applicant at least ten days notice stating the basis for the objection. There is no language in Section 470(a.2) of the Liquor Code that could be construed to mean that the ten days referred to therein is the ten-day period prior to the date the license term commences. In the present case, the record shows that the Board properly gave the Club ten days notice with respect to the Board's initial objections to the July 1, 2000 renewal of the Club's liquor license. Therein, the Board objected on the basis of the Club's improper conduct as evidenced by 10 incidents of disturbances at or immediately adjacent to the Club during the time period January 1998 to June 2000. In the amended objection letter dated October 5, 2000, the Board objected again on the basis of the Club's improper conduct but cited as evidence 4 additional incidents of disturbances at or immediately adjacent to the Club during the time period January 1998 to October 2000. Because the hearing was scheduled for October 19, 2000, we conclude based on the language of Section 470(a.2) that the Club did have the required ten days notice of the additional incidents.

We further conclude that the Board and the trial court properly considered incidents, which occurred subsequent to the

---

er the trial court committed an error of law or abused its discretion. *Pennsylvania Liquor*

*Control Board v. Bartosh,* 730 A.2d 1029 (Pa. Cmwlth.1999).

renewal date in determining whether the Club's license should be renewed. Herein, upon receipt of the Club's timely application for renewal of its license, the Board granted the Club a temporary authority to operate during the pendency of the Club's application. Due to the fact that the Liquor Code is remedial legislation and the fact that the Board granted the Club temporary authority to operate during the pendency of the Club's renewal application, we hold that the Board properly considered the incidents which occurred after the commencement of the July 1, 2000 renewal period. As stated previously herein, the Board may consider the manner in which the licensed premises is being operated and any substantial steps to address the activity occurring on or about the licensed premises when the premises is open for operation. Therefore, we conclude, that the Board was not prohibited from relying on any incident occurring after the renewal period as support for the non-renewal of the Club's liquor license.

■ We now turn to the next issue presented for our review, whether the trial court's findings are supported by substantial evidence. Based upon our resolution of the first issue raised herein, we must review all six incidents relied upon by the Board and the trial court to determine whether the trial court's findings are supported by substantial evidence.[5]

Incident number 98–2342 involved a fight in front of the licensed premises on December 6, 1998 at 3:30 a.m. The police officer responding to the incident testified that there was a large group of individuals in front of the premises on the sidewalk and in the street engaged in a fight. The police officer testified further that he observed individuals coming from the premises engaged in fighting.

Incident number 98–1561 occurred on July 17, 1998. The responding police officer testified that he was dispatched to the licensed premises at 2:20 a.m. The police officer testified that upon his arrival, he observed young kids outside on the stoop of the premises throwing dice. The police officer testified further that the kids appeared to be in the age range of their late teens to twenties.

Incident number 00–5397 occurred on April 8, 2000 at 3:00 a.m. The responding police officer testified that upon his arrival at the licensed premises, he observed a large group of people. The police officer testified that he saw two people enter into a physical altercation on the sidewalk directly in front of the Club. The police officer testified further that he verbally directed that the fighting stop and that the crowd disperse; however, the crowd began to gather and place a barrier around those fighting. The police officer testified that he observed individuals exiting the licensed premises into the crowd. The police officer testified that when he released a chemical agent in the air, the crowd dispersed.

Incident number 00–5966 occurred on July 22, 2000 at 3:19 a.m. The police officer responding to the incident testified that another officer was on a traffic stop at the intersection next to the licensed premises when some people were giving the officer problems regarding the traffic stop. The officer requested assistance. When the responding officer arrived at the licensed premises, the Club was closing and

5. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Republic Steel Corporation v. Workmen's Compensation Appeal Board (Shinsky)*, 492 Pa. 1, 421 A.2d 1060 (1980). Appellate review must focus on whether there is rational support in the record, when viewed as a whole, for the agency action. *Id.*

approximately twenty-five to thirty people were exiting the premises. The responding officer observed five or eight people in the group use loud, profane language directed toward the police officers.

Incident number 00–6171 occurred on August 26, 2000 at 2:50 a.m. The police officer responding testified that he was dispatched to the area of the licensed premises for a fight. Upon the officer's arrival, he observed a large crowd outside the premises. The officer also observed one hundred people exiting the licensed premises onto the street. The officer testified that the people were yelling, screaming and throwing bottles at each other and the police officers. Additional units were requested and approximately ten police officers and the K–9 unit were used to disperse the crowd. The officer testified that after the crowd was dispersed, he entered the licensed premises and observed that the Club was in disarray. The police officer testified further that the crowd formed from the door of the licenses premises down the street and that there were approximately one hundred fifty to two hundred people in the crowd but that no arrests were made with respect to the incident.

Incident number 00–5983 occurred on July 24, 2000 at approximately 2:13 a.m. The responding officer testified that he was on a routine patrol and noticed a man standing near the licensed premises on the corner. The man stated that the owner assaulted him inside the licensed premises. The police officer testified that Mr. Hill stated that the man was disruptive and bothering other customers. According to Mr. Hill, when he asked the man to leave and while escorting him out of the premises, the man slipped and fell. Mr. Hill told the police officer that the man began kicking Mr. Hill in the chest area. The police officer concluded that the man appeared to be a disgruntled patron who was asked to leave the premises.

The Club argues that the Licensing Bureau failed to prove a relationship between the foregoing incidents, which occurred outside the licensed premises, and the manner in which the licensed premises is operated. Therefore, the Club contends that the trial court's order sustaining the Board's refusal to renew the Club's liquor license must be reversed. We disagree.

After reviewing the foregoing incidents, we believe that a reasonable mind would conclude that the trial court's finding and conclusion that the Club's liquor license should not be renewed are supported by substantial evidence. Three of the foregoing incidents involved large crowds engaged in fighting while the Club was still open for operation and one involved young kids playing dice on the stoop of the premises while the Club was open for operation. The record shows that patrons exited the licensed premises to engage in the fighting and that the kids were playing dice on the licensed premises. One incident involved approximately seven or eight patrons exiting the licensed premises and harassing the police while the police were attending to a nearby traffic stop.

This Court recognizes that consideration may be given to whether the licensee has taken any substantial steps to address the activity occurring on or about the licensed premises when the premises is open for operation. *See* Section 470(a.1)(4), 47 P.S. § 4–470(a.1)(4); *Pennsylvania Liquor Control Board v. TLK, Inc.*, 518 Pa. 500, 544 A.2d 931 (1988). However, the trial court's finding that the Club did not take substantial measures to prevent criminal or illegal activity on or about its premises is supported by Mr. Hill's testimony. Mr. Hill testified that the Club feels no need to address problems occurring outside the licensed premises involving its patrons.

Accordingly, the foregoing six incidents, coupled with the citation history of the Club, are sufficient to support the finding and conclusion that the Club's liquor license should not be renewed. The trial court's order is affirmed.

## ORDER

AND NOW, this *29th* day of *August*, 2002, the order of the Court of Common Pleas of Beaver County in the above captioned matter is affirmed.