# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

O.D.'s Plantation, Inc.,                       :
                                               :
                    Appellant                  :
                                               :   No. 1151 C.D. 2017
              v.                               :   Submitted: August 3, 2018
                                               :
Pennsylvania Liquor Control Board              :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED


**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                        **FILED:  December 28, 2018**


        This is an appeal from an order of the Court of Common Pleas of
Dauphin County (trial court) denying the appeal of O.D.'s Plantation, Inc. (Licensee)
from a decision of the Pennsylvania Liquor Control Board (PLCB) refusing
Licensee's renewal application for Restaurant Liquor License No. R-17606 for its
bar located at 1601 Sycamore Street, Harrisburg, Pennsylvania (the Licensed
Premises).  For the reasons set forth below, we affirm the trial court.

        When Licensee sought renewal of its liquor license in 2014, the PLCB's
Bureau of Licensing (Bureau) granted the renewal, but notified Licensee that it was
concerned about incidents involving the Licensed Premises.  (Trial Court Op. at 2;
Bureau Ex. 5, Reproduced Record (R.R.) at 290a-291a.)   The Bureau advised
Licensee:

However, the decision to renew your license does not diminish the serious nature of the allegations of fights, assaults, public drunkenness, drugs and disorderly operations reported by the Harrisburg Police Department during the time period March 2012 to present.

This letter serves as a warning that you, as a licensee, must take affirmative steps to prevent violations of the Liquor Code and/or prevent employees and patrons from engaging in illegal activities in and around your premises through increased cooperation with the Harrisburg Police Department and the Bureau of Liquor Control Enforcement of the Pennsylvania State Police in order to retain your licensing privilege. Failure to do so could result in further action against your licensed business.

(Bureau Ex. 5, R.R. at 290a.)

Licensee filed a renewal application with the PLCB for its restaurant liquor license for the renewal period from March 1, 2016 through February 28, 2018. On February 19, 2016, the Bureau timely notified Licensee that it objected to the renewal based on Licensee's history of nine adjudicated citations for violation of the Liquor Code,[1] five incidents involving police action at or near the Licensed Premises between March 2014 and February 2016 that included "drugs, weapons, minors, and disorderly operations," and on the grounds that Licensee's manager and one of its officers were no longer reputable. (Bureau Ex. 2, R.R. at 281a-282a.) On April 28, 2016, the Bureau sent Licensee amended objections to the renewal stating the same objections as the February 19, 2016 notification, describing the incidents involving police action as six incidents between March 2014 and April 2016 that included "drugs, weapons, minors, disorderly operations and a shooting," and stating additional objections that Licensee had failed to report a change in officers within 15 days in violation of PLCB regulation 40 Pa. Code § 5.91 and that Licensee and

---

[1] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§ 1-101 – 10-1001.

2

its listed officers were not the only entities with a pecuniary interest in the license. (Bureau Ex. 3, R.R. at 284a-286a.)

A hearing on Licensee's renewal application was held on August 3, 2016. At the hearing, the Bureau introduced into evidence nine adjudicated citations against Licensee between 1998 and 2012 for violation of the Liquor Code and called five Harrisburg police officers to testify to incidents at the Licensed Premises on October 9, 2014, January 30, 2015, April 2, 2015, September 11, 2015, and April 10, 2016. Licensee called two witnesses, Lue Ethel Croom, the executrix of the estate of Licensee's deceased owner, Otis D. Powell; and John Washington, Licensee's manager.

The nine citations included citations in 2012 and 2011 for failure to maintain complete and truthful records; 2011, 2010, and 2004 citations for paying for malt or brewed beverages with checks returned for insufficient funds; and 2011, 2001, and 1998 citations for furnishing alcoholic beverages to minors. (Trial Court Op. at 3-5, 12; Bureau Ex. 6) Licensee did not dispute the accuracy of this citation history. Ms. Croom testified that she oversees Licensee's operations and has been overseeing its operations since Otis D. Powell suffered a stroke in 2012. (PLCB Hearing Testimony (H.T.) at 107-09, 111-12, R.R. at 182a-184a, 186a-187a.) On cross-examination, however, she admitted that she had been involved in Licensee's operations, including writing checks and paying its bills, for 30 years. (*Id.* at 120, R.R. at 195a.) The evidence showed that Otis D. Powell was the president and sole shareholder of Licensee, that he died on November 13, 2015, two days after Ms. Croom filed the renewal application on his behalf under his power of attorney, and that Otis D. Powell's will bequeathed his ownership of Licensee to Ms. Croom. (*Id.* at 106-07, R.R. at 181a-182a; Bureau Ex. 1, R.R. at 278a-279a; Bureau Ex. 7, R.R.

3

at 293a; Licensee Ex. 1, R.R. at 780a; Licensee Ex. 2, R.R. at 781a-786a.) Licensee did not report the change in officers or ownership to the PLCB. (Trial Court Op. at 12; PLCB Op. at 110; R.R. at 921a.)

The police officers testified that the following incidents occurred at the Licensed Premises:

On October 9, 2014, police officers found bundles of heroin and cocaine, individual packages of marijuana, and a stolen, loaded handgun in trashcans inside the Licensed Premises. (PLCB H.T. at 13-24, R.R. at 88a-99a.) The recording from Licensee's video surveillance cameras showed that four men who were in the Licensed Premises threw the drugs and gun in the trashcans just before police entered. (*Id.* at 18-23, 30-33, R.R. at 93a-98a, 105a-108a.) Police also found in the jacket of one of these men two ounces of cocaine, an individual package of another illegal drug known as MDMA, two digital scales, and $905 in cash, and found three individual packages of marijuana and $390 in cash on one of the other three men. (*Id.* at 21-24, R.R. at 96a-99a.)

On January 30, 2015, police arrested a woman who had gone into the Licensed Premises and was found, when she left, to have in her possession a crack pipe that had been used. (PLCB H.T. at 44-55, R.R. at 119a-130a.)

On April 2, 2015, police officers found an underage individual in the Licensed Premises at the bar with a beer and found on him a stolen, loaded handgun, a baggie of crack cocaine, and 91 packets of heroin. (PLCB H.T. at 58-65, R.R. at 133a-140a.)

On September 11, 2015, a shooting occurred outside the Licensed Premises. (PLCB H.T. at 68-78, R.R. at 143a-153a.) The incident began as an argument inside the Licensed Premises, and the participants began waving guns in

4

the vestibule of the Licensed Premises before leaving the building a minute or less before the shooting. (*Id.* at 73-89, R.R. at 148a-164a.)

On April 10, 2016, a crowd gathered outside the Licensed Premises at closing time and it appeared that a fight was beginning to start, but a police officer successfully dispersed the crowd by activating his siren and lights. (PLCB H.T. at 90-97, R.R. at 165a-172a.)

The officers testified that Ms. Croom cooperated with their investigations by providing video recordings of the October 9, 2014 and September 11, 2015 incidents. (PLCB H.T. at 16-18, 28, 33, 80-81, R.R. at 91a-93a, 103a, 108a, 155a-156a.) The officer who investigated the September 11, 2015 shooting, however, testified that Licensee's security guard was not fully cooperative with police. (*Id.* at 73-74, R.R. at 148a-149a.)

Ms. Croom and Mr. Washington testified that since 2012 or 2013, Licensee has had a security guard on duty on Thursdays through Sundays, from 9:00 p.m. to 2:00 a.m., who screens patrons with a metal detecting wand. (PLCB H.T. at 119, 124-25, 133-34, 171-72, 178, R.R. at 194a, 199a-200a, 208a-209a, 246a-247a, 253a.) Licensee also maintained a list of patrons who were barred from its premises. (*Id.* at 112-13, 132-33, 147-48, R.R. at 187a-188a, 207a-208a, 222a-223a.) Ms. Croom was aware of the October 9, 2014, April 2, 2015, and September 11, 2015 incidents. (*Id.* at 16-17, 80-81, 123-24, 175-78, 183-84, R.R. at 91a-92a, 155a-156a, 198a-199a, 250a-253a, 258a-259a.) All three of these incidents occurred after 9:00 p.m. on a night when security was on duty. (*Id.* at 13-14, 59, 68, 69, R.R. at 88a-89a, 134a, 143a, 144a.) Licensee, however, made no changes to its security procedures in response to the incidents. (*Id.* at 124, 162-65, 169-72, 178-79, 184, 193-96, R.R. at 199a, 237a-240a, 244a-247a, 253a-254a, 259a, 268a-271a.)

5

Licensee did not add the patrons arrested in the incidents to its barred patrons list until 2016. (*Id.* at 165-66, 173-74, R.R. at 240a-241a, 248a-249a.) Licensee also did not take any disciplinary action against any employees in response to those incidents; the security guard who was working when the incidents occurred remained employed by Licensee until 2016, when he was discharged for failure to show up for work. (*Id.* at 120-21, 123-24, 157, R.R. at 195a-196a, 198a-199a, 232a.) Ms. Croom and Mr. Washington testified that Licensee maintains a logbook of incidents, including identification card checks for underage drinking, but did not produce this incident log at the renewal hearing. (*Id.* at 119, 130-32, 159-60, 190-93, R.R. at 194a, 205a-207a, 234a-235a, 265a-268a.) Mr. Washington admitted that although he is Licensee's manager, he works only day hours and is not regularly present at the Licensed Premises in the evening. (*Id.* at 127-28, 155-56, R.R. at 202a-203a, 230a-231a.)

Based upon its review of the record from the hearing, the PLCB refused the renewal application. Licensee then appealed to the trial court. A *de novo* hearing was held on June 7, 2017, at which the PLCB moved the administrative record into evidence. (Trial Court H.T. at 3, 31, R.R. at 956a, 984a.) At this hearing, Licensee called only three witnesses: two individuals that it had recently hired who had no knowledge of the incidents or of security measures implemented by Licensee prior to the 2016 license renewal administrative hearing and the individual who the PLCB had alleged was a non-reputable officer of Licensee, who testified that he had not been an officer of Licensee for 15 years. (*Id.* at 29-42, R.R. at 982a-995a.) On July 18, 2017, the trial court affirmed the PLCB's order. The trial court concluded that the renewal was properly denied based both on Licensee's citation and violation history and on the incidents of illegal activity involving the Licensed Premises and

Licensee's failure to take corrective measures following these incidents. (Trial Court Order at 1-2; Trial Court Op. at 11-13.) The instant appeal followed.[2]

Renewal of a liquor license is not automatic. *Jim Jay Enterprises, Inc. v. Pennsylvania Liquor Control Board*, 91 A.3d 274, 283 (Pa. Cmwlth. 2014); *Paey Associates, Inc. v. Pennsylvania Liquor Control Board*, 78 A.3d 1187, 1197 (Pa. Cmwlth. 2013); *First Ward Republican Club of Philadelphia v. Pennsylvania Liquor Control Board*, 11 A.3d 38, 43 (Pa. Cmwlth. 2010). Section 470(a.1) of the Liquor Code,[3] provides that the PLCB may, in its discretion, refuse to renew a liquor license for any of the following grounds:

> (1) if the licensee, its shareholders, directors, officers, association members, servants, agents or employes have violated any of the laws of this Commonwealth or any of the regulations of the board;
>
> (2) if the licensee, its shareholders, directors, officers, association members, servants, agents or employes have one or more adjudicated citations under this or any other license issued by the board or were involved in a license whose renewal was objected to by the Bureau of Licensing under this section; [or]
>
> *             *             *
>
> (4) due to the manner in which this or another licensed premises was operated while the licensee, its shareholders, directors, officers, association members, servants, agents, or employes were involved with that license. When considering the manner in which this or another licensed premises was being operated, the board may consider activity that occurred on or about the licensed premises or in areas under the licensee's control if the

---

[2] Our review in a liquor license renewal case is limited to determining whether the trial court's findings of fact are supported by substantial evidence or whether the trial court abused its discretion or committed an error of law. *St. Nicholas Greek Catholic Russian Aid Society v. Pennsylvania Liquor Control Board,* 41 A.3d 953, 954 n.1 (Pa. Cmwlth. 2012).

[3] Added by the Act of December 21, 1998, P.L. 1202.

7

activity occurred when the premises was open for operation and if there was a relationship between the activity outside the premises and the manner in which the licensed premises was operated. The board may take into consideration whether any substantial steps were taken to address the activity occurring on or about the premises.

47 P.S. § 4-470(a.1).

Violations of the Liquor Code or PLCB regulations by the licensee and adjudicated citations can be sufficient grounds for denying renewal of a liquor license, even if they predate the most recent renewal period. 47 P.S. § 4-470(a.1)(1), (2); *Jim Jay Enterprises, Inc.*, 91 A.3d at 283; *Paey Associates, Inc.*, 78 A.3d at 1200-01; *St. Nicholas Greek Catholic Russian Aid Society v. Pennsylvania Liquor Control Board,* 41 A.3d 953, 959-60 (Pa. Cmwlth. 2012). A licensee is strictly liable for violations of the Liquor Code and PLCB regulations and may lose its license on that basis without proof that it had knowledge of the statutory or regulatory violations. *Pennsylvania Liquor Control Board v. TLK, Inc*., 544 A.2d 931, 932-33 (Pa. 1988); *Paey Associates, Inc.*, 78 A.3d at 1193, 1198.

Here, the evidence showed and the trial court found that Licensee had nine adjudicated citations, including bad check and recordkeeping violations in 2004, 2010, 2011 and 2012. (Trial Court Op. at 3-5, 12.) Although the last adjudicated citation was in 2012, the trial court found that Ms. Croom, who was responsible for Licensee's operations at the time of the renewal application and was to become Licensee's sole owner, was involved in running Licensee and paying its bills at the time of the bad check and recordkeeping violations, that no substantial actions were taken by Licensee to cure those operational deficiencies, and that there was a further violation in 2015 of PLCB regulation 40 Pa. Code § 5.91 of failure to report the change in Licensee's officers after Otis D. Powell's death. (Trial Court

Op. at 12.) These findings and conclusions by trial court are sufficient to sustain the denial of Licensee's renewal application. *Paey Associates, Inc.*, 78 A.3d at 1200-01 (single past adjudicated citation sufficient to support affirmance of non-renewal); *Pennsylvania Liquor Control Board v. Northwoods Tavern, Inc.*, (Pa. Cmwlth., No. 1156 C.D. 2012, filed January 8, 2013), slip op. at 2, 10-13 (history of citations sufficient for non-renewal even though almost all were before the last renewal period).[4] Indeed, there was also evidence in the record of two other recent or continuing violations of the Liquor Code and PLCB regulations, an additional incident of furnishing alcohol to a minor in 2015 and continued failure in 2016 to report a change in officers with respect to an individual who had been removed as an officer in 2002. (PLCB H.T. at 59-62, R.R. at 134a-137a; Trial Court H.T. at 29-31, R.R. at 982a-984a; PLCB Op. at 113, R.R. at 924a.)

Licensee does not dispute the adjudicated citations or the 2015 violation of PLCB regulation 40 Pa. Code § 5.91, but contends that the trial court erred in basing its decision on these violations because Licensee allegedly took substantial remedial measures. We do not agree. A trial court has discretion to order license renewal despite Liquor Code violations and adjudications on the ground that the licensee has taken substantial steps to prevent future violations. *Goodfellas, Inc. v. Pennsylvania Liquor Control Board*, 921 A.2d 559, 566 (Pa. Cmwlth. 2007); *U.S.A. Deli, Inc. v. Pennsylvania Liquor Control Board*, 909 A.2d 24, 28 (Pa. Cmwlth. 2006). Licensee, however, did not show that it took steps to remedy the violations and conditions at issue. Most of the corrective steps that Licensee asserts that it took

---

[4] *Northwoods Tavern, Inc.* and *Crocodile Rock Corp. v. Pennsylvania Liquor Control Board*, (Pa. Cmwlth., No. 35 C.D. 2013, filed May 12, 2014), and *White House Café, Inc. v. Pennsylvania Liquor Control Board*, (Pa. Cmwlth., No. 850 C.D. 2011, filed April 23, 2012), discussed below, are unreported decisions. These decisions are therefore not binding precedent, but are considered by the Court for their persuasive value. 210 Pa. Code § 69.414(a).

concern security at the Licensed Premises, not violations of the Liquor Code or the conditions on which the citations were based. (Appellant's Br. at 35-38.) The only evidence of remedying the bad check and recordkeeping violations on which the trial court based its decision consisted of Ms. Croom's conclusory testimony that the recordkeeping violations have been "rectified" and that there have been no further bad checks. (Appellant's Br. at 38-39; PLCB H.T. at 113-14, R.R. at 188a-189a.) The trial court was not required to find that this testimony was credible or that it showed that Licensee had taken substantial steps to prevent future violations.

Moreover, the trial court also found that the incidents of illegal activity at the Licensed Premises were sufficient to warrant denial of the license renewal. (Trial Court Op. at 12-13; Trial Court Order at 2.) The PLCB may refuse to renew a license where the licensee knows or should have known of criminal activities at its premises and fails to take substantial affirmative steps to prevent such activities. 47 P.S. § 4-470(a.1)(4); *Jim Jay Enterprises, Inc.*, 91 A.3d at 284; *Paey Associates, Inc.*, 78 A.3d at 1198; *In re License Renewal Application of Quippan Club*, 806 A.2d 491, 495-47 (Pa. Cmwlth. 2002). "There is no magic number or type of incident or span of time" that is required for the denial of renewal on this basis. *Paey Associates, Inc.*, 78 A.3d at 1199. Even a small number of incidents can constitute sufficient grounds for refusing renewal of a liquor license if the incidents are serious crimes and the licensee has actual knowledge of at least some of the serious incidents. *Quippan Club*, 806 A.2d at 495-47 (six incidents in 20-month period, three of which involved fights, were sufficient to deny license renewal); *Crocodile Rock Corp. v. Pennsylvania Liquor Control Board*, (Pa. Cmwlth., No. 35 C.D. 2013, filed May 12, 2014), slip op. at 5-7, 17-22 (two assaults involving patrons and one shooting outside the premises in a 13-month period); *Northwoods Tavern, Inc.*, slip op. at 3-4, 15-22

(two assaults involving patrons, one of which involved a firearm and a knife, and two drug buys in licensee's parking lot in an 11-month period, even though the licensee did not know of the drug buys); *White House Café, Inc. v. Pennsylvania Liquor Control Board*, (Pa. Cmwlth., No. 850 C.D. 2011, filed April 23, 2012), slip op. at 3, 12-19 (three assaults involving weapons and serious injury or death in a two-year and four-month period).

Here, the evidence showed that there were five incidents in an 18-month period after Licensee's last renewal, and that three of these, the October 9, 2014, April 2, 2015, and September 11, 2015 incidents, involved serious criminal offenses. In two of those incidents, illegal, loaded guns, large quantities of drugs, and drugs packaged for sale were found on the Licensed Premises. The third serious incident was a shooting following an argument between patrons in the Licensed Premises and the brandishing of guns inside Licensee's building.

Licensee argues that the incidents do not support the refusal of its renewal application because there was not a relationship between the incidents and the manner in which the Licensed Premises were operated. This argument likewise fails. Incidents occurring inside the premises or which began inside the premises that involve the licensee's patrons are causally linked to the operation of the licensee's business and may be grounds for denying renewal of a liquor license without any further showing of a relationship to the licensee's operations. *Paey Associates, Inc.*, 78 A.3d at 1198-1200; *St. Nicholas Greek Catholic Russian Aid Society,* 41 A.3d at 960; *In re License Renewal Application of Quippan Club*, 806 A.2d at 496. The October 9, 2014 and April 2, 2015 incidents both occurred inside the Licensed Premises. In the October 9, 2014 incident, individuals in the Licensed Premises used the premises for disposal of drugs, including cocaine and heroin, and

11

a loaded, stolen firearm. In the April 2, 2015 incident, a patron brought a baggie of crack cocaine, 91 packets of heroin, and a loaded, stolen firearm to the Licensed Premises. The September 11, 2015 shooting involved Licensee's patrons, and although it occurred just outside the Licensed Premises, it began as an argument between armed patrons inside the Licensed Premises. All of these incidents were therefore sufficiently related to the manner in which the Licensed Premises were operated to deny liquor license renewal under Section 470(a.1)(4) of the Liquor Code.

Licensee also argues that it was not proved that it knew or should have known of the illegal activity and that the evidence showed it took substantial remedial measures. Both of these arguments are contrary to the record in this case. There was ample evidence that Licensee had actual knowledge of the October 9, 2014, April 2, 2015, and September 11, 2015 incidents. Licensee's witnesses admitted that Ms. Croom was told of the October 9, 2014 and April 2, 2015 gun and drug arrests. (PLCB H.T. at 122-24, 175-78, 183-84, R.R. at 197a-199a, 250a-253a, 258a-259a.) In addition, the police officers testified that they called Ms. Croom concerning the October 9, 2014 and September 11, 2015 incidents, that she provided videotape of both of those incidents, that an officer interviewed Licensee's security guard concerning the September 11, 2015 shooting, and that the security guard was aware of the shooting. (*Id.* at 16-17, 73-77, 80-81, R.R. at 91a-92a, 148a-152a, 155a-156a.)

The record is equally clear that Licensee failed to take timely corrective measures in response to these incidents. The remedial security measures that Licensee contends that it undertook to prevent illegal activities by patrons consisted of video surveillance cameras, employment of a security guard who screened patrons

12

with a metal detecting wand, signage, exterior lighting, an incident logbook, and a barred patrons list. (Appellant's Br. at 35-38.) All of these measures predated the incidents at issue here. Licensee's witnesses testified that the video surveillance cameras and lighting were installed before 2010, that it had a security guard who screened patrons with the wand since 2012 or 2013, that the signs have been posted at the Licensed Premises since before the October 9, 2014 incident, that the Licensee had a barred patrons list since at least 2010, and that the logbook was already in use before the October 9, 2014 incident. (PLCB H.T. at 124, 162-65, 169, 175-79, R.R. at 199a, 237a-240a, 244a, 250a-254a.) Licensee's witnesses admitted that Licensee made no changes to its security procedures or operations in response to the incidents and that no disciplinary action was taken against any employee. (*Id.* at 122-24, 171-72, 177, 183-84, 193-96, R.R. at 197a-199a, 246a-247a, 252a, 258a-259a, 268a-271a.) Indeed, Licensee did not even add the names of the individuals who were arrested to its barred patrons list until 2016, after the Bureau objected to the license renewal. (*Id.* at 165-66, 173-74, R.R. at 240a-241a, 248a-249a.) The trial court's determination that Licensee took no substantial affirmative steps to prevent future illegal activity is therefore supported by the evidence.

We find no abuse of the discretion of the trial court in upholding the PLCB's denial of renewal here and no error of law or lack of support for its findings. Accordingly, we affirm the trial court.

_____
**JAMES GARDNER COLINS, Senior Judge**

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

O.D.'s Plantation, Inc.,                    :
                                            :
                    Appellant               :
                                            :    No. 1151 C.D. 2017
          v.                                :
                                            :
Pennsylvania Liquor Control Board           :


## **O R D E R**


AND NOW, this 28th day of December, 2018, the order of the Court of Common Pleas of Dauphin County in the above matter is **AFFIRMED**.


_____
**JAMES GARDNER COLINS, Senior Judge**