## Rydewski's Appeal.

172

Argued January 31, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*James F. Masterson,* for appellant.

*Thomas I. Guerin,* Special Deputy Attorney General, with him *Charles J. Margiotti,* Attorney General, for appellee.

OPINION BY STADTFELD, J., February 28, 1936:

On August 16, 1935, the appellant filed with the Pennsylvania Liquor Control Board, his application for restaurant liquor license for premises No. 2624 E. Westmoreland Street in the City of Philadelphia, said license to be for the term of one year from November 1, 1935. The applicant already held a restaurant liquor license for the year 1935.

Upon receipt of such application, the board caused its enforcement officers to make investigation of the

manner in which the licensed premises were being conducted. On September 6, 1935, at 10:30 A. M., the officers inspected the premises.

The Liquor Control Board refused him a license for 1936 for the reason that he was not "operating an establishment habitually and principally used for the purpose of serving food and also because you do not maintain a sufficient quantity of foodstuffs on hand at all times." He appealed to the Quarter Sessions Court of Philadelphia County, which after hearing, dismissed the petition in an opinion by MILLAR, J. At the hearing, an agent of the Liquor Control Board testified that he made an inspection of the appellant's restaurant on September 6th and found one pound of roast beef, one pound of steak, four small cans of soup, half a dozen green peppers and half a dozen cakes. The kitchen was located on the third floor which is also used by the family. There were no kitchen implements in the establishment. The tableware consisted of one-half dozen spoons, eight knives and two dozen forks. The applicant ascribed the shortage in tableware to the fact that he had loaned them out the day before to an unnamed friend for a christening. His average gross receipts per week ran from $250 to $300 of which $60 was derived from the sale of food and the balance from the sale of beer and liquor.

We quote from the opinion of the lower court: "Appellant had two witnesses, one of whom lives three doors from his place. She testified she was in there four or five times a week and at times saw from ten to fifteen people being served with food. Her explanation for being so often in the restaurant, although she lives only three doors away, was that she liked 'his eats'. The other witness lives two doors away, and, according to her testimony, eats in the restaurant three times a week, but this witness apparently is engaged in the daytime and explains her patronage, although

she lives but a short distance away, by the fact that she is employed. We conclude the testimony on appellant's behalf was incredible."

The Pennsylvania Liquor Control Act of July 18, 1935 (No. 399), P. L. 1246, defines a restaurant, Article 1, Section 2 (p. 1249) as a "reputable place, operated by responsible persons of good reputation, and habitually and principally used for the purpose of providing food for the public; the place to have an area within a building of not less than four hundred square feet, equipped with tables and chairs accommodating at least thirty persons at one time.

Under Section 3 of the Act of 1935, it is provided: "(a). This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth, and to prohibit forever the open saloon; and all of the provisions of this Act shall be liberally construed for the accomplishment of this purpose." The method evidently adopted to accomplish their purpose was to confine the sale of intoxicating liquors to bona fide hotels, restaurants and clubs, and we must construe the act so as to accomplish this purpose, not necessarily by limiting the number of licenses, but by strictly confining them to legitimate eating places. The burden is on the applicant to satisfy the Board that he is "a person of good repute and seeks a license for a hotel, restaurant or club as defined in this act, etc." (Section 403). The sale of liquor is only incidental to the maintenance of a legitimate eating place as described in the Act.

The lower court did not consider appellant's witnesses credible; also found that the applicant did not operate a restaurant "habitually and principally used for the purpose of providing food for the public."

Under the Act of July 18, 1935, P. L. 1217, Sec. 7 providing for Appeals to the Court of Quarter Sessions

from the refusal of the board or treasurer to issue a license, it is provided as follows: "At said hearing testimony may be presented by the applicant and the board or treasurer after the consideration of which the court shall either sustain the refusal of the board or treasurer or order an issuance of the license to the appellant. There shall be no further appeal." As stated by our brother KELLER (now President Judge) in Revocation of Mark's License, 115 Pa. Superior Ct., 256, 176 A. 254, on p. 263: "...... under the Act of April 18, 1919, P. L. 72, we may examine the evidence in such cases to test the right of the court to make the order complained of: Sterrett v. MacLean, 293 Pa. 557, 560, 561, 143 A. 189; not to weigh conflicting evidence, but to determine whether the order appealed from is supported by any evidence and whether the court or judge had jurisdiction to do the act complained of: (citing cases)".

A careful examination of the testimony, in our opinion, fully justified the action of the lower court, and there was no abuse of discretion in dismissing the appeal.

The assignment of error is overruled and the order of the lower court affirmed.