Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board, Appellant *v.* Gary Lee Dobrinoff and Michael R. Dobrinoff, t/a Flintlock Inn, Appellees.

454

Argued January 30, 1984, before Judges ROGERS, CRAIG and COLINS, sitting as a panel of three.

*Felix Thau,* Assistant Counsel, with him *Gary F. DiVito,* Chief Counsel, for appellant.

*Barry J. Peffley,* for appellees.

*Cecilia Macri,* Assistant General Counsel, for Amicus Curiae, Pennsylvania Human Relations Commission.

OPINION BY JUDGE CRAIG, February 27, 1984:

The Pennsylvania Liquor Control Board has appealed from the Court of Common Pleas of Dauphin County which, after receiving additional evidence in a court hearing, vacated a ten-day suspension which the

board had issued against the Flintlock Inn, a bar owned and operated by appellees, the Dobrinoffs. The court's order also stated that it reversed the "Liquor Control Board's finding."

The elements of the statutory framework for the suspension were threefold, as follows:

1. *Sex Discrimination:* The bar, as a "place of public accommodation, resort or amusement," discriminated on the basis of sex, contrary to the Pennsylvania Human Relations Act, 43 P.S. §955(i)(1)—a violation of any Pennsylvania law being a basis for suspension under section 471 of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §4-471;

2. *Food Service Failure:* The bar breached the requirement that, to hold a restaurant liquor license, licensee shall conduct a "restaurant," meaning a reputable "place . . . habitually and principally used for the purpose of providing food for the public. . . ." Sections 102, 404 of the Liquor Code, 47 P.S. §§1-102, 1-104; and

3. *Tap Mislabeling:* The bar violated the prohibition against a licensee serving "malt or brewed beverages from any faucet, spigot or other dispensing apparatus, unless the trade name or brand of the product shall appear . . . upon such faucet, spigot or dispensing apparatus." Section 493(6) of the Liquor Code, 47 P.S. §4-493(6).

In view of the Inn's record of previous citations, the board deemed the suspension to be mandatory, under Section 471 of the Code.

As to the facts of the discrimination charge, the trial court's opinion stated "the fact" that "on two occasions, when go-go girls were the 'entree' of the

evening, a female patron was exempted from the $1.00 cover charge, which was requested of the male voyeurs." The board's "finding of fact," actually a conclusion of law, was simply that the licensees committed unlawful discriminatory practices" on dates in June, 1982. The trial court's numbered finding, also a conclusion of law, stated only that there "were no unlawful discriminatory practices" on those dates.

With respect to the matter of food service, the board's finding was that the establishment was "not a bona fide restaurant habitually and principally used for the purpose of providing food for the public," in that there was "an insufficient quantity of food, dishes, silverware and cooking utensils" on the June dates. The trial court's finding was as follows:

2. While the evidence establishes that on three dates in June of 1982 the premises were not principally used for providing food, this condition was only temporary; hence, not a violation.

With respect to the mislabeling charge, the board found that the licensees "failed to label beer taps properly" on June 30, 1982. The trial court finding, apparently accepting that factual determination, expressed a conclusion of law, as follows:

3. The inadvertent mislabeling of a quarter keg of beer is a de minimis violation and too trivial to warrant sanction.

As demonstrated above, the facts, as seen by both the board and the court, are not substantially disputed. The trial court vacated the suspension on the grounds that the charged actions were de minimis and committed without intent to violate. The trial court's opinion characterized the nature of some of the charges as "nit-picking," quoted a previous opinion criticizing the board for failure to take enforcement action against more substantial offenses, and then concluded that the board's charges, against the "triv-

ial'' activities in this case, are ''a little like stomping on a mouse in the kitchen when there's a tiger at the door.''

However justified the trial court's criticism might be as a matter of a concerned personal view, the legislature nevertheless has mandated that certain minor matters, as well as major breaches of law, be treated as statutory violations. A court cannot reverse Liquor Code charges by declaring the violations to be de minimis. *Pennsylvania Liquor Control Board v. Johnstown Turn-Verein*, 71 Pa. Commonwealth Ct. 451, 454 A.2d 1195 (1983). Nor is proof of intent to violate required under the Liquor Code. *Allegheny Beverage Co. v. Pennsylvania Liquor Control Board*, 67 Pa. Commonwealth Ct. 487, 492, 447 A.2d 725, 727 (1982).

The cover charge distinction was apparently temporary, and may well have been intended for purposes other than a desire to oppress male customers (the trial court opinion suggests ''chivalry and courtesy to the fair sex'' as a possible purpose). However, when a place of public accommodation has in fact based the collection or exemption of an admission charge solely upon a difference in gender, having no legitimate relevance in the circumstances, then as a matter of law there is a violation of the Human Relations Act's prohibition against discrimination on the basis of sex.

As to the absence of food service, the trial court found that matter to be insubstantial, because a small amount of food items were on the premises,[1] and to be of brief duration and excusable, in that there was some remodeling work in progress, including painting of the bar's kitchen, on one of the occasions. However, previous decisions have not required proof that the

---

[1] The court's opinion records that the food supply on hand consisted of two pounds of chicken necks, a half pound of cheese, a gallon of pickles, and three cans, each, of sauerkraut and tomato sauce.

failure to serve food be permanent or long sustained. *Appeal of Albud,* 188 Pa. Superior Ct. 635, 149 A.2d 163 (1959) (one date, insufficient facilities); *Rydewski's Appeal,* 121 Pa. Superior Ct. 171, 183 A. 437 (1936) (license renewal case, one date, minimal food supply). In considering the Liquor Code requirement that the establishment be "habitually" and "principally" used to provide food, the trial court interpreted "habitually" by concluding that it "would seem to allow for temporary deviation." On the other hand, the opinion also quoted *Peltz v. Printz,* 186 Pa. 347, 40 A. 486 (1898), as equating "habitual" with "constant" and "regular," as well as with "customary," "usual" and "common." Nothing in previous decisions or in the wording of the statute requires the board, or authorizes a court, to overlook an absence of food service detected on three occasions, spanning most of "the month of June," during which period, according to the court, "the Inn was not able to serve food."

The beertap mislabeling, even though unintentional and shortlived, was nevertheless a violation, according to the authorities cited above.

A common pleas court may effect a change in penalty only when its factual findings have departed materially and significantly from those of the board. *Pennsylvania Liquor Control Board v. Latrobe Armed Services Association,* 16 Pa. Commonwealth Ct. 199, 329 A.2d 549 (1974). Under the applicable rule as to scope of review, an order of a trial court is subject to reversal, even where the court held its own hearing, when there is error of law or abuse of discretion. *Pennsylvania Liquor Control Board v. Camac Bar, Inc.,* 43 Pa. Commonwealth Ct. 349, 403 A.2d 136 (1979).

Here, where the trial court itself confirmed the factual aspect of the violations, but vacated the pen-

alty primarily because of their temporary nature and absence of intent to violate, reversal of the trial court order and reinstatement of the suspension are required.

### ORDER

Now, February 27, 1984, the order of the Court of Common Pleas of Dauphin County, dated April 26, 1983, is reversed, and the suspension imposed by the Pennsylvania Liquor Control Board, at Citation No. 1746 of 1982, is reinstated.