IN THE COMMONWEALTH COURT OF PENNSYLVANIA

770 Ameribeer, Inc.,     :
     Appellant    :
            :  No. 509 C.D. 2022
     v.      :
            :  Argued: November 6, 2023
Pennsylvania Liquor Control Board :


BEFORE: HONORABLE PATRICIA A. McCULLOUGH, Judge
     HONORABLE MICHAEL H. WOJCIK, Judge
     HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY JUDGE McCULLOUGH      FILED: June 28, 2024


   770 Ameribeer, Inc. (Licensee) appeals from the April 14, 2022 order of the Court of Common Pleas of Philadelphia County (trial court), which, following a *de novo* hearing, affirmed the decision of the Pennsylvania Liquor Control Board (Board), denying Licensee's application to renew its restaurant liquor license under the Liquor Code.[1] Upon review, we affirm.[2]

## I. FACTS AND PROCEDURAL HISTORY

   Licensee is a business located at 1501-03 Federal Street, Philadelphia, Pennsylvania, and the holder of Pennsylvania Restaurant Liquor License No. R-12833 (License). On September 19, 2020, Licensee filed an application to renew its license for the period beginning on November 1, 2020, and ending October 31, 2022. (Reproduced Record (R.R.) at 10a, 65a-68a.) The Board's Bureau of Licensing (Bureau) objected to the renewal of Licensee's License based on its failure to operate

---

[1] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§ 1-101 - 10-1001.

[2] This Court's decision in this appeal was held in abeyance from November 13, 2023, until April 15, 2024, while the case was referred to the Court's Mediation program.

a *bona fide* restaurant.[3]  (R.R. at 80a-81a.)  Additionally, the Bureau asserted that Licensee's President, Secretary, Director, Stockholder, and Manager, Stock Hua, and Licensee's Treasurer, Director, and Stockholder, Lindsay Ang, were not responsible people of good repute and/or had become people of ill repute based on their failure to comply with the Liquor Code.  *Id.*

Pursuant to Section 464 of the Liquor Code, 47 P.S. § 4-464, a hearing on the nonrenewal was held on February 25, 2021, before a Board hearing examiner.  The Bureau presented uncontested evidence of Licensee's citation history, which revealed two prior adjudicated citations, both for failure to operate a *bona fide* restaurant.  The first citation, Citation 18-1566, was issued on October 23, 2018, and was for violating Section 102 of the Liquor Code, 47 P.S. § 1-102.  For Citation 18-1566, an administrative law judge (ALJ) found that on five occasions (July 28, August 7, August 23, September 20, and September 23, 2018), Licensee failed to provide food to Bureau Enforcement Officers upon request.  Specifically, the ALJ made the following relevant findings of fact in his adjudication on Citation 18-1566:

> 1. On July 28, 2018[,] at 8:00 p.m., Bureau officers entered the licensed premises.  A male clerk was on duty behind the counter.  The officer ordered one shot of Bacardi rum to go.  The clerk replied, "No liquor.  Just beer."  The

---

[3] "Restaurant" is defined under Section 102 of the Liquor Code as follows:

> [A] reputable place operated by responsible persons of good reputation **and habitually and principally used for the purpose of providing food for the public**, the place to have an area within a building of not less than four hundred square feet, **equipped with tables and chairs, including bar seats, accommodating at least thirty persons at one time**. The [B]oard shall, by regulation, set forth what constitutes tables and chairs sufficient to accommodate thirty persons at one time.

47 P.S. § 1-102 (emphasis added).

second officer requested an order of French fries. The clerk told him that the kitchen closed at 5:00 p.m.

2. On August 7, 2018[,] at 10:50 a.m., the officer entered the license premises. A female clerk was on duty behind the counter. The officer ordered an egg and cheese sandwich. The clerk told him that they did not serve breakfast. The officer asked if they had any food at all and the clerk replied, "Only hamburger." When he ordered a burger, the clerk stated, "we have no bread and it will take a long time because the grill is off." The officer asked how long it would take and she replied, "Very long time." He asked if he could use the restroom while he waited. The clerk said that someone was currently using the restroom and that it was going to be cleaned afterwards.

3. On August 23, 2018[,] at 5:46 p.m., the officer entered the licensed premises. A female clerk was on duty behind the counter. The officer ordered a hamburger and a 12-ounce Corona beer. The clerk replied, "We are out of hamburger." The officer asked if he could order something else and the clerk said that the kitchen was closed. The officer then said he would just take the beer. The officer paid $2.50 and asked if he could sit down to drink his beer while he waited for his Uber to arrive. The clerk told him that he could sit on the window ledge in front of the store. The officer observed tables and chairs set up behind a locked metal door. He asked the clerk if he could have access to the seating area, but she said he could not because it wasn't clean.

4. On September 20, 2018[,] at 2:50 p.m., the officer entered the licensed premises. A female clerk was on duty behind the counter. The officer ordered a hamburger and a Corona. The clerk replied, "We are all out of hamburger." The officer asked if they had any food at all. She replied, "No. No food." Kitchen is cleaned up and closed." []

5. On September 23, 2019[,] at 3:40 p.m., the officer entered the licensed premises. A female clerk was on duty behind

3

the counter. The officer ordered a cheesesteak and a Corona. The clerk replied, "No, the cook is not in." He then asked if they had any food that he could order. She replied, "No, we have no food."

(R.R. at 72a.) Licensee admitted to the charge and was fined $300.00.

The second citation, Citation 19-1702, was issued on November 5, 2019, and was also for violating Section 102 of the Liquor Code, 47 P.S. § 1-102, which requires that Licensee have sufficient seating for at least 30 restaurant patrons. The findings of fact for Citation 19-1702 provided that Licensee "maintained insufficient seating to operate as a *bona fide* restaurant." (R.R. at 76a-78a.) Licensee's License was suspended until it complied with the Liquor Code and provided sufficient seating for patrons. *Id.* at 89a. After moving these Citations and other administrative documents into evidence, the Bureau rested.

Before the hearing examiner, Mr. Hua testified that his business is a restaurant, but he serves less food now because of the competition and because of the low profit margins. *Id.* at 57a. He does not have a cook. He has a grill but he "barely turn[s] it on." *Id.* at 58a. He sells frozen fish, chicken sandwiches, and hamburgers and uses the microwave to cook those. *Id.* He testified that shortly after he was cited for not having enough seating, he remedied the deficiency the same day. *Id.* at 28a-29a. Despite his testimony that he sells food, he indicated that 60% of his revenue was from beer sales, 10% was from red wine sales, and 30% was from selling bags of chips, soda and cigarettes. *Id.* at 51a-52a. Mr. Hua offered photographs which showed tables set with bowls and plastic spoons. *Id.* at 94a. However, on cross-examination, he was unable to identify any food items he was selling that were served in a bowl and eaten with a spoon. *Id.* at 54a-55a.

Based on the testimony and evidence presented, the hearing examiner recommended the renewal of the License application on the condition that Licensee

4

hire a food preparer/cook to be employed for at least 15 hours a week and maintain records demonstrating such compliance. Following review of the record and the hearing examiner's recommendation, by order dated June 2, 2021, the Board, however, refused Licensee's renewal application, concluding that Licensee is abusing its Board-licensed privilege to operate a restaurant liquor license. Citing to Licensee's citation history, the Board found that Licensee was not a *bona fide* restaurant on at least five occasions in 2018 and at least one occasion in 2019. The Board found that Licensee's pattern of not being able to follow the basic guidelines for licensure warranted the denial of its renewal application.

Licensee appealed to the trial court and a hearing was held on April 7, 2022. The Board offered into evidence the complete record of the proceedings before the Board hearing examiner. In an effort to demonstrate that he and his wife are not persons of ill repute, Mr. Hua testified that they have been licensees since 1999. During that time, they have never been cited for service of alcohol to minors or any other major Liquor Code violation. There also have been no citations for criminal activity being afoot at or near the premises. Mr. Hua testified that after he received the Board's decision, he hired a cook to work five hours per day, three to four days a week. *Id.* at 222a-23a. Mr. Hua also explained that he has a viable relationship with the Philadelphia police who patrol the neighborhood. Mr. Hua is often asked to allow the police to view the videotapes to establish possible criminal activity that has taken place apart from the licensed premises. *Id.* at 219a-20a.

After the hearing, considering the matter *de novo*, the trial court affirmed the Board's decision and denied Licensee's appeal.[4] *Id.* at 255a. On May 18, 2022, Licensee filed an appeal with this Court.

---

[4] By order dated May 4, 2022, the trial court denied Licensee's Motion for Reconsideration and Motion for Supersedeas. (R.R. at 268a, 285a.)

On June 7, 2022, Licensee filed a Concise Statement of Errors Complained on Appeal (Concise Statement) pursuant to Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 1925(b). *Id.* at 286a-90a. Thereafter, the trial court filed an opinion in support of its April 14, 2022 order affirming the Board's decision and denying Licensee's appeal. *Id.* at 291a-307a.

## II. ISSUES

On appeal,[5] Licensee raises four issues. First, Licensee argues that the trial court's decision is not supported by substantial evidence. Second, Licensee asserts that the trial court abused its discretion and/or committed an error of law by misconstruing the "*bona fide* restaurant" requirements in the Liquor Code and concluding that Licensee did not meet these requirements. Third, Licensee contends that the trial court erred by not considering testimony regarding the affirmative steps Licensee took in response to the Board's issuance of two prior citations of the Liquor Code. Fourth, Licensee maintains that the Board's nonrenewal process violated

---

[5] A trial court reviewing a Board decision not to renew a liquor license hears the matter *de novo*, and may sustain, alter, modify, or amend the Board's order even when it is based upon the same evidence presented before the Board. *See* Section 464 of the Liquor Code, 47 P.S. § 4-464; *U.S.A. Deli, Inc. v. Pennsylvania Liquor Control Board*, 909 A.2d 24 (Pa. Cmwlth. 2006). Our review in a liquor license renewal case is limited to a determination of whether the trial court's findings of fact are supported by substantial evidence, whether it abused its discretion, or whether it committed an error of law. *First Ward Republican Club of Philadelphia v. Pennsylvania Liquor Control Board*, 11 A.3d 38, 43 n.9 (Pa. Cmwlth. 2010); *see also Domusimplicis, LLC v. Pennsylvania Liquor Control Board*, 202 A.3d 836, 840 n.7 (Pa. Cmwlth. 2019) ("Where a trial court heard a liquor license matter *de novo*, our review is limited to determining whether there is substantial evidence to support the trial court's findings or whether the trial court committed an error of law or abused its discretion.").

6

Licensee's due process rights by unlawfully commingling prosecutorial, legislative, and adjudicative functions.[6]

## III. DISCUSSION

### A. Substantial Evidence

Licensee first argues that the trial court's decision was not supported by substantial evidence. It contends that the trial court based its decision to uphold the license revocation upon two "minor" citations for which it had only received small monetary fines.

A liquor license is a privilege granted by the state, and those entrusted with that privilege must demonstrate the highest degree of responsibility to their fellow citizens. *Street Road Bar & Grille, Inc. v. Pennsylvania Liquor Control Board*, 876 A.2d 346 (Pa. 2005); *Commonwealth v. Koczwara*, 155 A.2d 825 (Pa. 1959). One who accepts a license must be deemed to consent to all proper conditions and restrictions which have been or may be imposed by the legislature in the interest of public morals and safety. *Hyland Enterprises, Inc. v. Pennsylvania Liquor Control Board*, 631 A.2d 789 (Pa. Cmwlth. 1993). To be sure that the interests of the citizens of the Commonwealth are protected, it is necessary to closely examine the operation of an

---

[6] In footnote 1 of its brief, the Board contends that Licensee waived appellate review of all issues under Pa.R.A.P. 2101, because it failed to include a statement of jurisdiction, and set forth its entire argument in the summary of argument section of its brief. In addition, it complains that the page numbers in the table of contents do not correspond to the places in the brief where the respective issues are discussed and because the procedural history of the case contains extensive legal argument in violation of Pa.R.A.P. 2117(b) ("statement of the case shall not contain any argument").

A brief's technical deficiencies may not warrant outright quashal of the underlying appeal if they "do[ ] not preclude this Court from discerning [an appellant's] arguments . . . or from performing meaningful review of the issues on appeal[.]" *Spring Creek Management, L.P. v. Department of Public Welfare*, 45 A.3d 474, 482 n.10 (Pa. Cmwlth. 2012). In this case, we decline to quash the appeal because, despite the alleged defects, Licensee has adequately presented its specific issues for review, and we are in no way impeded from conducting meaningful appellate review.

7

establishment when assessing whether to renew its liquor license. *Philly International Bar, Inc. v. Pennsylvania Liquor Control Board*, 973 A.2d 1 (Pa. Cmwlth. 2008). The legislature has mandated that certain minor matters, as well as major breaches of law, be treated as statutory violations, and a court cannot reverse the Board by declaring the violations to be *de minimis*. *Pennsylvania Liquor Control Board v. Dobrinoff*, 471 A.2d 941 (Pa. Cmwlth. 1984).

Those who have been granted the privilege of holding a liquor license are strictly liable for violations of the Liquor Code and the Board's regulations that occur on the licensed premises. *Pennsylvania State Police v. S&B Restaurants, Inc.*, 52 A.3d 513, 520 (Pa. Cmwlth. 2012), (citing *Pennsylvania Liquor Control Board v. TLK, Inc.*, 544 A.2d 931, 933 (Pa. 1988)). Board licensees are obligated to know, without need of any warning from authorities, that they must comply with the Liquor Code. *Paey Associates, Inc. v. Pennsylvania Liquor Control Board*, 78 A.3d 1187 (Pa. Cmwlth. 2013). The Commonwealth Court has upheld the Board's exercise of its discretion under Section 470 of the Liquor Code and has stated that even one past citation or violation may be sufficient to support a decision refusing a renewal application, regardless of when it occurred. *Id.* at 1200; *Hyland Enterprises*; *Slovak-American Citizens Club v. Pennsylvania Liquor Control Board*, 549 A.2d 251 (Pa. Cmwlth. 1988).

Renewal of a liquor license is not an automatic procedure. *U.S.A. Deli, Inc. v. Pennsylvania Liquor Control Board*, 909 A.2d 24 (Pa. Cmwlth. 2006). Section 470(a.1) of the Liquor Code, 47 P.S. § 4-470(a.1), provides:

> (a.1) The Director of the Bureau of Licensing may object to[,] and the [B]oard may refuse[,] a properly filed license application:
>
>> (1) if the licensee, its shareholders, directors, officers, association members, servants, agents

or employees have violated any of the laws of this Commonwealth or any of the regulations of [the Board];

(2) if the licensee, its shareholders, directors, officers, association members, servants, agents or employees **have one or more adjudicated citations** under this or any other license issued by [the Board] or were involved in a license whose renewal was objected to by the Bureau of Licensing under this section;

(3) if the licensed premises no longer meets the requirements of this act or of the [Board]'s regulations . . . .

47 P.S. § 4-470(a.1) (emphasis added).

The Liquor Code provides for the nonrenewal of a restaurant liquor license where "the licensed premises no longer meets the requirements of this act or the Board's regulations" or where, as here, "the licensee . . . [has] one or more adjudicated citations." 47 P.S. § 4-470(a.1), (2), (3). The Board may examine the entire citation history to see if there is a pattern of activity to warrant the nonrenewal of the liquor license. *I.B.P.O.E. of West Mount Vernon Lodge 151 v. Pennsylvania Liquor Control Board*, 969 A.2d 642 (Pa. Cmwlth. 2009). Neither the Liquor Code nor prior appellate holdings place any per se temporal limitation on the Board's review of a licensee's citation history. *St. Nicholas Greek Catholic Russian Aid Society v. Pennsylvania Liquor Control Board*, 41 A.3d 953 (Pa. Cmwlth. 2012).

Concerning the refusal to renew a restaurant liquor license, this Court has routinely upheld decisions refusing a renewal application where the licensee failed to operate the business as a restaurant by failing to offer food. In *Dobrinoff*, 471 A.2d 941, the Board found that the licensee's establishment, the Flintlock Inn, which held a restaurant liquor license, was not a *bona fide* restaurant habitually and principally used for the purpose of providing food to the public because there was insufficient quantity

9

of food, dishes, silverware, and cooking utensils on three dates in June 1982. The trial court reversed, finding the violation was insubstantial because a small amount of food items was on the premises, and the violation was of a brief duration and excusable, in that there was some remodeling work in progress, including painting of the bar's kitchen, on one of the occasions. *Id.* at 943. This Court reversed the trial court and reinstated the suspension, noting that previous decisions upholding a violation "have not required proof that the failure to serve food be permanent or long sustained." *Id.* (citing *Appeal of Albud*, 149 A.2d 163 (Pa. Super. 1959) (one date, insufficient facilities)); *Rydewski's Appeal*, 183 A. 437 (Pa. Super. 1936) (license renewal case, one date, minimal food supply). We explained

> [n]othing in previous decisions or in the wording of the statute requires the [B]oard, or authorizes a court, to overlook an absence of food service detected on three occasions, spanning most of "the month of June," during which period, according to the court, "the Inn was not able to serve food."

*Dobrinoff*, 471 A.2d at 943.

In *Appeal of Albud*, the Superior Court found that substantial evidence existed to support the trial court's decision to affirm the Board's denial of a licensee's restaurant liquor license renewal. There, an agent of the Board testified that when he visited the premises, he asked to see the kitchen. He was guided to a room measuring ten feet by four feet, which contained a stored toaster and ten pieces of China dishes. In addition, there were about twelve sandwiches in a refrigerated beer case behind the bar. The owner told him that this was the only kitchen it had because it did not serve food and rarely needed any more dishes. 149 A.2d at 164-65. The Superior Court concluded that the trial court was warranted in finding that the facilities did not indicate the operation of a *bona fide* restaurant. *Id.* at 165.

10

In *In re 2856 Yan Corp.* (Pa. Cmwlth., No. 555 C.D. 2023, filed June 26, 2023),[7] this Court upheld the trial court's decision to affirm the Board's denial of a licensee's application to renew a restaurant liquor license. There, the licensee received seven citations for violations of the Liquor Code: two citations related to the licensee's sale of alcoholic beverages without a valid health license, two citations were for selling alcoholic beverages for off-premises consumption, and three citations were for failing to act as a *bona fide* restaurant. With respect to the licensee's failure to act as a *bona fide* restaurant, the Board introduced undisputed evidence that on November 17, 2016, Board agents entered the licensee's premises and observed that there were no tables, available seating, food preparation equipment, or cooking/eating utensils. *Id.*, slip op. at 3. When the officers attempted to order food, the licensee informed them that the establishment did not serve food and did not allow patrons to sit inside the premises. *Id.* At most, the licensee was able to offer the officers three cups of instant cup noodles. *Id.*, slip op. at 4. On November 16, 28, and 29 and December 13, 2017, the licensee had no available seating or tables for patrons. *Id.* At the November 29 visit, in addition to there being no available seating, the licensee informed the officers that the establishment did not serve food. *Id.* On the December 13 visit officers observed individuals ordering food, but there was still no available seating. *Id.* On January 31, 2019, the premises again had insufficient seating and insufficient serving space. *Id.*

The trial court found that the seven citations from 2016 to 2019 demonstrated a pattern of behavior establishing the licensee's incapability of following the most basic requirements set out by the Liquor Code. It further found it "egregious" that on two occasions the licensee admitted that it did not serve food or have proper food preparation equipment. *Id.*, slip op. at 8. Based on the existence of sufficient

---

[7] We may cite unreported panel decisions as persuasive authority pursuant to Section 414(a) of our Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

evidence of record, we affirmed the trial court's conclusion that the licensee abused its license through repeated violations of the Liquor Code and its repeated failure to operate as *a bona fide* restaurant.

Similarly, in *New Sorrento, Inc. v. Pennsylvania Liquor Control Board*, 440 A.2d 676 (Pa. Cmwlth. 1982), this Court upheld a finding that the licensed establishment operated by the licensee was not a *bona fide* restaurant habitually and principally used for the purpose of providing food for the public, in that there was an insufficient quantity of food, dishes, silverware, and cooking utensils on the licensed premises on March 19 and 31, and April 1, 4, and 17, 1978.

Here, the trial court's decision to deny renewal of Licensee's license is amply supported by the record. Licensee's initial eligibility for a restaurant liquor license required it to demonstrate that it operates an actual restaurant, without which it would have never been granted a restaurant liquor license in the first place. The undisputed history of two citations for failing to operate a *bona fide* restaurant was sufficient to establish a pattern of disregard for the licensing privilege. Licensee received two citations both relating to multiple instances of Licensee's voluntary noncompliance with the liquor licensing requirements for operation of a *bona fide* restaurant under the Liquor Code for routinely not serving food and for not having adequate seating. The first citation demonstrated that on numerous occasions in a span of a three-month period between July and September 2018, when Bureau Enforcement Officers entered the premises, they were denied the ability to order food.

By definition, and certainly under Section 102 of the Liquor Code, food for purchase is fundamental to the operation of a restaurant. 47 P.S. § 1-102 (defining "restaurant" as a place "habitually and principally used for the purpose of providing food for the public"). Licensee gave Bureau Enforcement Officers a variety of excuses as to why there was no food on the premises, including that "the kitchen is closed," the food will take a "very long time" to prepare, or "we have no food." It is also noteworthy

12

that although Licensee holds a restaurant liquor license, Mr. Hua testified that 100% of his revenue came from alcohol sales and sales of chips, soda, and cigarettes. By his own admission, not even 1% was attributable to food sales. He essentially admitted that at some point after he received his restaurant liquor license, he stopped preparing and serving food because it was not profitable or there was too much competition in the neighborhood. The second citation related to Licensee's failure to maintain adequate seating for patrons who may wish to eat in its establishment as required by the Liquor Code. The total unavailability of food on five separate occasions and lack of seating to accommodate at least thirty patrons supports the conclusion that Licensee at some point in time ceased to operate as a restaurant and became a take-out only alcohol business. This undisputed evidence of Licensee's prior repeated violations amply supports the trial court's decision. *See Paey*, 78 A.3d at 1200 (even a single violation is sufficient to justify nonrenewal of liquor license). Moreover, unlike Licensee, we do not view this pattern of violations and multiple sustained citations as *de minimis*. Even if we believed the violations were *de minimis*, this Court could not reverse Liquor Code violations by declaring the violations to be *de minimis*. *See Dobrinoff*, 471 A.2d at 493.

Thus, based on this Court's review of the record, there was substantial evidence presented to support the trial court's decision to affirm the Board's refusal to renew Licensee's restaurant liquor license.

13

## B. *Bona Fide* Restaurant[8]

Licensee next argues that the trial court erred as a matter of law by concluding that "at a bare minimum" a licensee "must sell and serve food" and "must principally sell and serve food" to be considered a *bona fide* restaurant. (Licensee's Br. at 27) (citing to page 11 of the trial court opinion). Licensee contends that the trial court erred in its analysis because "[t]here is no such requirement that a [l]icensee must sell food, nor a certain type of food, nor a certain quantity, percentage or dollar amount of food." *Id.* It maintains that the Liquor Code only requires that a licensee must "maintain a sufficient amount of food items available on the premises. It must provide a seating area consisting of 30 chairs at tables. It must maintain a valid Health Permit issued by the local municipality. It must have at least 400 square feet of serving area for its customers." *Id.* Licensee argues that none of these factors includes a mandatory requirement to "sell" food. It reasons that a licensee **cannot force** its customers to buy a food item. *Id.* (emphasis in original).

The trial court did not create a new law or misconstrue the definition of the term "restaurant" in Section 102 of the Liquor Code. The statute speaks for itself. Because Licensee held a restaurant liquor license, Licensee was required to operate a business that was "habitually and principally used for the purpose of providing food for the public." 47 P.S. § 1-102. On five different occasions, Bureau Enforcement Officers wanted to buy food, but there was no food to be had. A business that has no

---

[8] The Board argues that under Pa.R.A.P. 1925(b)(4)(vii), Licensee waived this issue for failure to include it in the Concise Statement. (Board's Br. at 14-15.) We disagree. Generally, issues not raised in a Concise Statement are waived. *See Commonwealth v. Castillo*, 888 A.2d 775, 780 (Pa. 2005). However, Licensee filed its Concise Statement based on only the trial court's April 14, 2022 order, which affirmed the Board and denied Licensee's appeal and did not include any reasoning or rationale for its decision. After Licensee filed its appeal to this Court, the trial court outlined its reasoning for its April 14, 2022 order. Therefore, in this limited context, because the trial court provided no rationale for its ruling and the rationale is not apparent from the record, we decline to find waiver.

14

food for purchase and consumption on five different dates at five different times of day is not a business "habitually and principally used for the purpose of providing food for the public." *Id.*

The trial court did not err in applying the *bona fide* restaurant standard to Licensee and concluding that Licensee did not satisfy that standard.

## C. Licensee's Remedial Steps

Next, Licensee argues that the trial court erred by not properly considering testimony regarding Licensee's remedial steps after the Board issued two citations. The Board argues that Licensee has waived this issue for failure to develop it in its brief. We agree.

Pursuant to Pa.R.A.P. 2119(a), the argument section of an appellate brief "shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). "At the appellate level, a party's failure to include analysis and relevant authority results in waiver." *Browne v. Department of Transportation*, 843 A.2d 429, 435 (Pa. Cmwlth. 2004).

Here, Licensee's brief on this issue is inadequate. Although Licensee's brief presents this issue in the "Statement of Questions Presented," its brief contains no argument section regarding this issue. (Licensee's Br. at 2.) Because Licensee cites no case law, there is no argument developed. Accordingly, we conclude that Licensee has waived this issue for purposes of our review.

Nonetheless, even if this issue was not waived, we would conclude that the trial court did not disregard or not properly consider Licensee's remedial steps.

In conducting a *de novo* review, the trial court is "the ultimate fact[ ]finder" and, as such, "is empowered to determine the weight and credibility of the evidence, resolve conflicts in the evidence, and is free to reject even uncontradicted

15

testimony." *Hotel Liquor License #H-2892 v. Tabs Entertainment, Inc.*, 125 A.3d 487, 490 (Pa. Cmwlth. 2015); *see also Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Big D. Restaurants, LLC*, 149 A.3d 890, 898 n.12 (Pa. Cmwlth. 2016) ("[A]lthough the trial court is required to receive the administrative record below, if offered, it is free to determine the weight and credibility of the evidence."). The trial court may specifically reassess the credibility of the Bureau's and licensee's witnesses and is free to reverse the Board's decision based solely on its credibility determinations, so long as those credibility determinations are made in accordance with the law. *Pennsylvania Liquor Control Board v. Mignogna*, 548 A.2d 689, 692 (Pa. Cmwlth. 1988); *see Protect PT v. Penn Township Zoning Hearing Board*, 220 A.3d 1174, 1191 (Pa. Cmwlth. 2019) ("As the fact[ ]finder, the trial court may reject even uncontradicted testimony if it finds that testimony lacking in credibility.").

"*De novo* review contemplates an independent evaluation of the evidence, which has already been presented. In essence, '*de novo* review' means that the reviewing court will reappraise the evidence in the record." *Two Sophia's, Inc. v. Pennsylvania Liquor Control Board*, 799 A.2d 917, 922 (Pa. Cmwlth. 2002). Our Supreme Court has stated:

> If anything, *de novo* review by the judicial branch assures litigants that [citations] based on violations of the Liquor Code will only be enforced when neutral judicial officers, detached from the [B]ureau charged with the task of monitoring and enforcing the liquor laws of this Commonwealth are satisfied that violations have, in fact, been established.

*Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Cantina Gloria's Lounge, Inc.*, 639 A.2d 14, 18 (Pa. 1994). When a trial court is obligated to perform *de novo* review, and act in a fact-finding capacity, this Court has emphasized that the trial court "must state the basis and reasons for its decision." *Aetna Life Insurance Co.*

16

*v. Montgomery County Board of Assessment Appeals*, 111 A.3d 267, 279 (Pa. Cmwlth. 2015).

Moreover, while a trial court has discretion to order license renewal despite Liquor Code violations on the ground that the licensee has taken substantial steps to prevent future violations, *see Goodfellas, Inc. v. Pennsylvania Liquor Control Board*, 921 A.2d 559 (Pa. Cmwlth. 2007), the trial court was not required to find that the remedial steps taken were sufficient to warrant renewal. The trial court acknowledged Mr. Hua's testimony that he cured the seating deficiency and hired a cook. However, the trial court ultimately found that Mr. Hua's testimony was "self-serving" and such measures did not reflect a good faith effort to become compliant. Regarding the corrective measures that had been claimed by Mr. Hua, the trial court explained its reasons for rejecting it as not credible.

> [T]his [c]ourt had deemed his salient portions of his sworn testimony to be incredibly self-serving. Moreover, this [c]ourt determined that in response to [the Board] citations, [Licensee's] steps had not reflected a good faith effort to become compliant. It is well settled that a licensee remains obligated to comply with the Liquor Code. [Licensee's] claimed minimal corrective action only resulted, if at all, when [its] license was revoked or at risk of revocation.

(Trial Court 1925(a) Opinion at 10-11.)

The trial court's analysis was in accordance with this Court's decision in *I.B.P.O.E.*, 969 A.2d at 649, wherein we held that "[r]emedial measures must be taken at a time when the licensed establishment knows or should know that illicit activity is occurring." Here, the trial court did consider Licensee's remedial steps, but ultimately concluded that despite knowing for years that his business must sell and serve food to be considered a *bona fide* restaurant, Mr. Hua only took steps to hire a cook after Licensee was at risk of revocation. By arguing that the trial court ignored Licensee's evidence of remedial measures, Licensee is, in effect, asking this Court to reweigh the

17

evidence and substitute its credibility findings for that of the trial court. Our role is not to reweigh the evidence or determine the credibility of the witnesses, but rather, to determine whether, upon consideration of the evidence as a whole, the trial court's findings have the requisite measure of support in the record. *Hotel Liquor License #H-2892*, 125 A.3d at 490.

Accordingly, we find this issue to be without merit.

## D. Due Process

Lastly, Licensee contends that the Board's nonrenewal process violated its due process rights by unlawfully commingling prosecutorial, legislative, and adjudicative functions. Licensee argues that the Board commingled these functions by selecting its own hearing examiner, who ruled in favor of the Bureau's counsel on objections and against Licensee, and, as a result, corrupted the record for the trial court.

The fundamental requirements of procedural due process are "adequate notice, the opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." *Commonwealth v. Turner*, 80 A.3d 754, 764 (Pa. 2013). "[T]he right to due process is as equally applicable to administrative agencies as it is to judicial proceedings." *Higgins v. Public School Employes' Retirement System*, 736 A.2d 745, 753 (Pa. Cmwlth. 1999); *see Erie Sports Bar, Inc. v. Pennsylvania State Police, Bureau of Liquor Control Enforcement*, 6 A.3d 663, 668 (Pa. Cmwlth. 2010).

Recently, we summarized and stated in *Yongs Place, Inc. v. Pennsylvania Liquor Control Board* (Pa. Cmwlth., No. 483 C.D. 2021, filed May 12, 2023):

> In *Lyness* [*v. State Board of Medicine*, 605 A.2d 1204 (Pa. 1992)], our Supreme Court addressed similar due process concerns in the context of a physician whose license to practice medicine was revoked. Therein, three members of the State Board of Medicine voted both to institute formal proceedings against the physician and, following a hearing, to

18

permanently revoke his medical license. 605 A.2d at 1206. Our Supreme Court held that this "commingling [of] prosecutorial and adjudicatory functions[,]" "where the very entity or individuals involved in the decision to prosecute are 'significantly involved' in the adjudicatory phase of the proceedings," constitutes a due process violation. *Id.* at 1207, 1210. Our Supreme Court opined that "a fair and impartial tribunal in the first instance is a cornerstone of our notion of due process." *Id.* at 1210 n.12. The Court noted that the defect could be cured by placing prosecutorial functions in a group of individuals or entity distinct from the State Board of Medicine, which renders the ultimate adjudication. *Id.* at 1209. "[I]f more than one function is reposed in a single administrative entity, walls of division [need to] be constructed which eliminate the threat or appearance of bias." *Id.*

*Yongs*, slip op. at 12.

Unlike *Lyness*, here, there is no evidence in the record to indicate that the members of the Bureau, which acted as the prosecutor under Section 470(a.1) of the Liquor Code, 47 P.S. § 4-470(a.1), were also members of the Board, which acted as the adjudicator under Section 464 of the Liquor Code, 47 P.S. § 4-464. In fact, as the trial court correctly stated:

> Frankly, there are sufficient walls between [Board's] administrative process renewing licenses and [its] prosecutorial process of litigating renewal dispute. The initial citations are written by Bureau [ ] Enforcement Officers, who belong to a branch of the Pennsylvania State Police Department. The [Board's] Director of Licensing, who is not a member of the [Board], issues the formal objection to the license renewal. The [Board] organizes the hearing to be adjudicated before an independent examiner. That Hearing Examiner is responsible for what evidence is admitted and what testimony is elicited during a fair hearing. In turn, the Board is insulated from both the objection to the renewal and the adjudication of the renewal request until [it] conduct[s] [its] own review of the record.

19

(Trial Court 1925(a) Opinion at 15-16.) We agree. Additionally, Licensee is unable to identify any specific evidence of record that such safeguards were either insufficient or were not maintained by the Board in this case.

Furthermore, any due process violation or other defect in the administrative proceedings was sufficiently cured by the *de novo* hearing before the trial court. During that hearing, Licensee presented evidence and mounted a vigorous challenge to the nonrenewal of its liquor license. *See Phillips v. Department of Transportation, Bureau of Driver Licensing*, 80 A.3d 561, 569 (Pa. Cmwlth. 2013); *Yongs*.

Therefore, we conclude that Licensee's due process argument fails.

## IV. CONCLUSION

Based on the foregoing, we affirm the trial court's order upholding the Board's license nonrenewal.

_____
PATRICIA A. McCULLOUGH, Judge


Senior Judge Leavitt dissents

20

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

770 Ameribeer, Inc.,    :
     Appellant :
          : No.  509 C.D. 2022
    v.     :
          :
Pennsylvania Liquor Control Board :

## *<u>ORDER</u>*

   AND NOW, this 28th day of  June, 2024, the April 14, 2022 order of the Court of Common Pleas of Philadelphia County is hereby AFFIRMED.


         _____
         PATRICIA A. McCULLOUGH, Judge